# Commonwealth *v.* Troy, Appellant.

*Criminal law—Murder—Evidence—Infant—Credibility of infant witness—Forgetfulness.*

1. Where the usual test applied by courts to children to determine whether they understand the result of false swearing has been met by a boy nine years old in a murder trial, and his testimony has been otherwise intelligent, his competency as a witness cannot be successfully attacked because he failed to remember the name of an aunt with whom he lived.

*Criminal law—Murder—Charge.*

2. A trial judge cannot be convicted of error in a murder trial because he characterized the length of time defendant talked with his mother just before the commission of the crime as "considerable," when it was only for ten or fifteen minutes, if it appears that the conversation was at night and the mother was at the time in bed.

*Criminal law—Murder — Assignments of error — Appeals—Excerpts from charge.*

3. A trial judge in a murder trial cannot be convicted of error by assigning an excerpt from his charge as error, where it appears, from the entire charge, that the instructions were full and adequate, in the matter complained of.

*Criminal law—Murder—Drunkenness—Charge—Evidence—Burden of proof.*

4. In a murder trial, where drunkenness is set up as a defense, the burden of proof is on defendant to prove his intoxication by the weight of the evidence.

*Appeals—Charge—Objection in the court below—Waiver.*

5. Where no objection is made at a murder trial to an alleged wrong use of a word by the trial judge although an opportunity is given to make such objection, the question will not be considered on appeal.

Argued April 10, 1922. Appeal, No. 85, Oct. T., 1922, by defendant, from judgment of O. & T., Allegheny Co., April T., 1921, No. 33, on verdict of murder of the first degree, in case of Commonwealth v. Walter Troy. Before MOSCHZISKER, C. J., FRAZER, SIMPSON, KEPHART and SCHAFFER, JJ. Affirmed.

Indictment for murder. Before SWEARINGEN, J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the first degree on which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were various rulings and instructions appearing by the opinion of the Supreme Court, quoting record.

*A. M. Oliver,* for appellant, cited: Com. v. Capero, 35 Pa. Superior Ct. 392; Pannell v. Com., 86 Pa. 260; Fawcett v. Fawcett, 95 Pa. 376; Com. v. Molten, 230 Pa. 399; Com. v. Ross, 266 Pa. 580.

*Harry A. Estep,* Assistant District Attorney, with him *H. H. Rowand,* District Attorney, for appellee, cited: Com. v. Colandro, 231 Pa. 343; Com. v. Palmer, 222 Pa. 299.

OPINION BY MR. JUSTICE SCHAFFER, May 8, 1922:

Appellant is under sentence of death for the murder of his wife.

The circumstances of the killing are not in dispute. Defendant, his wife, four children and mother lived in a two-room house, one room down, and the other, upstairs. The mother slept on the first and the others on the second floor. Defendant, who had been drinking on the day of the crime, returned to his house early in the evening, took a revolver from the drawer of a chiffonier on the second floor and left the house, saying he intended to see some men about securing work and was taking the weapon with him for protection. He returned to the house later and had a conversation with his mother on the subject of his wife having paid life insurance premiums, for which purpose he had provided her with money. He did not remain in the house on this occasion, but later, about ten o'clock, returned, got something to eat, talked in an intelligent way for ten or fifteen minutes to his mother, who was in bed in the downstairs room; he there partially undressed, picked up the revolver which he had laid on a table and went up stairs to the room in which his wife and children were sleeping. His mother testified that shortly after he reached this room, she heard him say: "I have a notion to kill you, you consumptive [using a vile term]," and his wife exclaimed, "Oh, Walter!" The witness further said: "I heard two shots." One of the shots apparently killed his wife instantaneously. Immediately after the shooting, defendant threw the revolver upon the floor and kicked it under a bed. He then descended to the first floor and went to a house in the neighborhood, where he saw his brother-in-law and his wife, defendant's sister, to whom

he said he had been fooling with a gun and it accidentally went off and shot his wife, and asked them to go over and see what they could do for her. While he was talking to these two persons, his nine-year-old son entered the house. Taking him aside, the father told him to say that he (the boy) had shot his mother. This conversation was overheard by the brother-in-law, sister and one of their children.

The boy, called as a witness by the Commonwealth, testified to the statement above mentioned made by his father to him, and that his father told him if he did not say that he (the boy) had killed his mother, he would be whipped. In pursuance of this instruction and threat from his father, the boy did tell the police he had done the shooting, but later retracted this statement. Carrying out the subterfuge, the defendant stated to the police the day after the shooting that his son had accidentally shot his mother. The boy testified he was awakened by the shot, saw his mother had been killed and witnessed his father throw the revolver on the floor and kick it under the bed and run down stairs.

The defense was intoxication. While it was not disputed by the Commonwealth that the defendant had been drinking, the degree of his intoxication depended largely on defendant's own testimony. The court affirmed a point on this branch of the case presented by defendant by which the jury was instructed that if they believed the accused "was under the influence of liquor to such an extent that he was incapable of forming an intention, the jury cannot find the defendant guilty of murder higher than second degree." While some of the witnesses characterized the condition of the defendant as being "crazy" drunk, those best qualified to speak of his condition immediately before and immediately after the killing, showed that he had a clear and understanding mind. His conversation with his mother just before the shooting was intelligent and sensible. She testified that there was nothing strange about him that attracted her attention

and that he impressed her as knowing what he was saying. The brother-in-law, who saw him immediately after the crime, said he smelled liquor on him but that he did not act like a drunken man; that, while his demeanor was nervous and excited, he did not think it was because of drink, but on account of fear. In a statement made to the police officers the day following the killing, in which the defendant implicated his son in the shooting, he told a lucid and connected story of his movements during the evening, his return to the house, his undressing before going upstairs and only claimed to have had five or six drinks of whiskey during the day and said that he was not drunk. Called as a witness in his own behalf on the trial, he said he did not know what he was doing at the time of the killing, and only realized what had happened, after the shooting, when he saw his wife lying dead in her bed. His explanation of his conflicting stories was that he was so crazy through drink that he did not know what he was saying.

The defendant complains in four respects, (1) that his nine-year-old son was incompetent as a witness; (2) that the court mistakenly stated the length of time during which he talked to his mother; (3) that the instructions on the defense of drunkenness were inadequate; and (4) that the trial judge erred in charging the jury the burden was on the defendant of proving this defense by the weight of the evidence.

The principal reason urged as to why the nine-year-old boy was incompetent, is, because, on his examination to test his capacity, he did not know the name of the aunt with whom he was living. This forgetfulness would not determine his incompetence, particularly as all the rest of his testimony was intelligent. His father, the defendant, must have considered him fully capable, as he trusted him to carry out the scheme formed on the night of the crime to take the blame of the shooting on himself. He met the usual test applied by courts to children to determine whether they understand the result of false

swearing by answering that he knew if he did not tell the truth he would go to hell. What was said in Com. v. Furman, 211 Pa. 549, 550, answers appellant's contention as to this witness: "The substantial test of the competency of an infant witness is his intelligence, and his comprehension of an obligation to tell the truth. The truth is what the law, under the rules of evidence, is seeking, and if a full and present understanding of the obligation to tell it, is shown by the witness, the nature of his conception of the obligation is of secondary importance;......the witness clearly comprehended the difference between truth and falsehood, and his duty to tell the truth. That was the substance of qualification as a witness. The trial judge in whose discretion the matter very largely rested was satisfied of the competency of the boy, and we are of opinion that his discretion was well exercised."

As to the second assignment of error, very little need be said. It would convict the trial judge of error because he characterized the length of time the defendant talked with his mother just before the commission of the crime as "considerable" when it was only for ten or fifteen minutes according to the testimony. It seems to us that this, under the circumstances, considering the time of night it was and that she was in bed, was a considerable time, but if defendant was not satisfied with this expression of the court, he should have called attention to it when the judge inquired of counsel at the end of his charge whether he had omitted saying anything which should have been said, to which defendant's counsel made no response.

Taking an excerpt from the charge, it is sought to convict the court below of error in its submission of the fact and degree of defendant's alleged drunkenness to the jury, but when the entire charge on this subject comes to be read, it is manifest that the instructions on this feature of the case were full and adequate. The jury was told that unless the defendant was in such a condition of

mind that he could have acted wilfully, deliberately and premeditatedly, he could not be found guilty of murder of the first degree, that that was the purpose of the defense of drunkenness which had been made to show that the defendant was unable, because of his condition, to act wilfully, to deliberate and premeditate. The testimony as to the amount defendant claimed he drank was fully recited and more than once the jury was told that if the accused was so intoxicated as to be incapable of acting wilfully, deliberately and premeditatedly, he could not be found guilty of first degree murder. More than this defendant could not ask: Com. v. Detweiler, 229 Pa. 304, 308. As before stated, his point submitted on this subject was affirmed. In instructing the jury that the burden was on defendant to prove his intoxication by the weight of the evidence, because the defense was affirmative, the court followed the legal principle as we have announced it. The burden of proving any affirmative defense is on the defendant: Com. v. Colandro, 231 Pa. 343; Com. v. Palmer, 222 Pa. 299. From the charge, the jury could clearly comprehend the difference between the heavy burden of proof which the Commonwealth was required to meet, to prove the guilt of the defendant beyond a reasonable doubt, and the lighter one resting on the defendant: Com. v. Keeler, 242 Pa. 416, 421.

Full consideration of all appellant's assignments of error convinces us that none has merit: they are overruled.

As is our duty under the Act of February 15, 1870, section 2, P. L. 15, we have carefully read the entire record in this case to ascertain whether it convincingly demonstrates that there are present in the proofs the ingredients necessary to a conviction of murder of the first degree; we find that they are present and therefore the judgment is affirmed.

The record is remitted to the court below for the purpose of execution.