Commonwealth ex rel. Cummins, Appellant, *v.* Price.

Argued October 7, 1965. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Silvestri Silvestri,* with him *Edward P. Zemprelli,* for appellant.

*Edwin J. Martin,* Assistant District Attorney, with him *Robert W. Duggan,* District Attorney, for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, April 19, 1966:

Defendant* was indicted for the murder of Nancy Flowers on December 21, 1963. He appeals from an Order of the Court below dismissing his *pretrial* petition for a writ of habeas corpus.

Defendant's petition for the writ, which was filed *November* 12, *1964,* averred (1) that he suffered permanent injury at the time of the alleged murder; and (2) that, as a result of this injury, he "has suffered a permanent loss of memory of [the facts, circumstances and all] the events prior to, at the time of and subsequent to the circumstances surrounding his arrest"; and (3) that his constitutional rights would be violated if he were brought to trial when unable ". . . to testify in his own behalf and otherwise intelligently aid his counsel in preparing and presenting a rational defense." He therefore asked (a) for absolute and complete discharge from custody and (b) that the murder indictment and any other criminal charges against him be dismissed, or alternatively (c) that the trial on the murder indictment be continued until he has regained his memory, and (d) that he be admitted to bail.

## Summary of Testimony

We shall summarize the testimony presented at the habeas corpus hearing. Defendant was observed in the early morning of *December* 21, *1963,* by two police officers. Their attention was attracted to him because he was driving on the wrong side of the road. They were on a special mission at the time and did not stop. While returning from this mission, they saw defendant's car parked on the berm of the road. When they pulled their car alongside defendant's car, they noticed two

---

* Raymond Cummins, who is relator herein.

persons sitting upright in the front seat of defendant's auto. Both of defendant's eyes were bulging out of his head and he was holding his handkerchief up to the right side of his face. The officers asked him if he was in need of medical assistance; he replied that he was all right, started his engine and drove off. The officers radioed the license number in order to identify the owner. When this information was received, they also discovered that police officer Frank Cummins was defendant's brother. Officer Cummins was picked up and the three officers proceeded to the Briggs house, where Nancy Flowers lived and worked for Briggs as a cook and housekeeper.

Defendant's car was found parked in Briggs' driveway; Nancy Flowers was lying on her side on the front seat. Defendant was leaning against the Briggs house, about 100 feet away from the car. Both were taken to the hospital, where Nancy Flowers died of a gunshot wound on the left side of her head.* Defendant had a gunshot wound on the right side of his head.

Officer Cummins found a revolver on the front seat under the body of Nancy Flowers. The bullets taken from the heads of defendant and Nancy were test-fired from the revolver by the County Crime Laboratory and were found to be of the same general class characteristics, but the laboratory was unable to make a more positive identification.

Defendant has consistently denied any knowledge or memory of the events of December 20th or 21st. However, there was no evidence and there is no contention by defendant that prior to Nancy's death, or at the time of her death, or at any time subsequent thereto, he was insane. On the contrary, he and all his witnesses assert that *he was sane and competent before*

---

* Defendant had written Nancy a love letter complaining of her affections for two other men and threatening suicide.

*Nancy's death, and is now completely sane and completely competent.*

All the evidence of the crime was circumstantial but was sufficient to establish a prima facie case of murder in the first degree: cf. *Commonwealth v. Finnie,* 415 Pa. 166, 202 A. 2d 85; *Commonwealth v. Carroll,* 412 Pa. 525, 194 A. 2d 911; *Commonwealth v. Gooslin,* 410 Pa. 285, 189 A. 2d 157; *Commonwealth v. Kravitz,* 400 Pa. 198, 161 A. 2d 861. The lower Court found (1) that according to the weight of medical testimony at the time of the hearing (on the petition for habeas corpus), defendant was not feigning a loss of memory concerning the events and actions which took place on December 20th and 21st, 1963; (2) that only two of the five medical experts (three psychiatrists, a neurologist and a psychologist) expressed the opinion that defendant's loss of memory would be permanent. The lower Court then held that under all the aforesaid facts defendant must stand trial because (a) he is admittedly sane and does not need or even seek hospital care, and (b) no legal authority or justification exists for postponing the trial or releasing a person charged with a crime who is sane but has no memory concerning the alleged criminal act, and (c) amnesia or circumscribed loss of memory is in the nature of an affirmative defense, comparable to that of insanity. For these reasons, the lower Court dismissed defendant's petition. Although we do not agree with all of these reasons, the Order of the lower Court must be affirmed.

Basically what defendant is seeking is absolute and permanent release from any trial for any event which occurred on December 20th or 21st because he cannot remember anything that occurred on those days, or in the alternative that his trial be continued until he recovers his memory of the events which took place on those dates, even though he claims that his lack of memory thereof is and will be permanent.

For over 100 years, lack of memory in murder cases has been a common and frequent defense. Although the expressions differ, they all amount to the same thing. Cases abound with commonly used statements or testimony by a person accused of or convicted of murder that "I don't remember anything"; "my mind went blank"; "I blacked out"; "I panicked and don't remember what I did or anything that happened." While the terminology of defendant's state of mind and alleged lack of memory is different in this case from the expressions often used by persons accused of crime to prove their lack of memory, it has never hitherto been sustained by any Court, although similar language to prove lack of memory has, as above noted, been used for more than a century.

In *Commonwealth v. Morrison*, 266 Pa. 223, 109 Atl. 878, the Court said (pages 229, 230) : ". . . The general presumption is that every man is normal and is possessed of ordinary faculties; such defenses as intoxication, insanity and aphasia* (or a mind not conscious of its acts), are affirmative defenses and the burden is on the defendant to establish them : Commonwealth v. Dale, 264 Pa. 362.

". . . The defendant hoped to exculpate himself by the statement that he was a drug fiend and had no recollection of what happened from the time he entered the jewelry store until some time after the crime was committed, that he was suffering from aphasia, superinduced by the narcotic." The Court rejected this defense and affirmed the conviction of murder of the first degree.

In *Commonwealth v. Iacobino*, 319 Pa. 65, 178 Atl. 823, the Court pertinently said (pages 68-69) : "Intention to kill may be shown by the defendant's acts or

---

* Incorrectly termed and later corrected by this Court to mean "amnesia". *Commonwealth v. Myma*, 278 Pa. 505, 123 Atl. 486.

words or by all the circumstances of the case; it may be inferred from the intentional use of a deadly weapon upon a vital part: Commonwealth v. Green, 294 Pa. 573, 584; Commonwealth v. Troup, 302 Pa. 246, 253. But, no case has gone to the extent of holding that the Commonwealth, in addition to proving circumstances indicating such intent beyond a reasonable doubt, must also show the mental capacity of defendant to formulate the intention manifested by his words or actions.

"In criminal, as in other matters, sanity is presumed. The defense of insanity is an affirmative one and must be established by the defendant by 'fairly preponderating evidence,' showing an unsound mind at the time the act was done. The presumption of sanity, which is the normal condition of man, 'holds good, and is the full equivalent of express proof until it is successfully rebutted': Commonwealth v. Gerade, 145 Pa. 289, 297; see Commonwealth v. Kilpatrick, 204 Pa. 218; Commonwealth v. Calhoun, 238 Pa. 474; Commonwealth v. Sushinskie, 242 Pa. 406; Commonwealth v. Molten, 230 Pa. 399; Commonwealth v. Scovern, 292 Pa. 26, 34. Similarly, when the defense is intoxication, the burden is on the defendant to establish that his intoxication was such as to prevent forming any intent. 'The mere intoxication of the defendant will not excuse or palliate his offense unless he was in such a state of intoxication as to be incapable of conceiving any intent. If he was, his grade of offense is reduced to murder in the second degree': Commonwealth v. Cleary, 135 Pa. 64; Commonwealth v. Detweiler, 229 Pa. 304, 308. The burden to establish the fact of intoxication is by 'fairly preponderating evidence': Commonwealth v. Walker, 283 Pa. 468, 475; Commonwealth v. Troy, 274 Pa. 265, 271; Commonwealth v. Prescott, 284 Pa. 255, 257-8. The same rule applies where the influence of drugs is relied upon to negative intention: Commonwealth v. Morrison, 266 Pa. 223.

"Where mental capacity at the time of the act is an issue, the Commonwealth is aided by the presumption of sanity, it is not required to prove affirmatively mental capacity to commit the act. As stated in Commonwealth v. Morrison, supra (page 229), 'The general presumption is that every man is normal and is possessed of ordinary faculties; such defenses as intoxication, insanity and aphasia (or a mind not conscious of its acts), are affirmative defenses and the burden is on the defendant to establish them. . . .'" See to the same effect, *Commonwealth v. Farrow,* 382 Pa. 61, 66, 114 A. 2d 170.

When carefully analyzed, amnesia actually is no defense at all and the statement in four prior decisions of this Court* that it is an affirmative defense is too broad and is hereby disavowed.

Amnesia does not absolve or exculpate the defendant from any of his criminal acts or from total criminal responsibility. Cummins' circumscribed amnesia, if it exists, occurred *after* the crime, and therefore had no effect on his motives or conduct or behavior or criminal acts at the time of the killing. Cummins' amnesia is not admissible to prove innocence or guilt. However, it is a circumstance which the Judge or the jury may consider in determining the penalty, if they believe it to exist.

### The Common Law Test for Standing Trial

Defendant-relator contends that he cannot be tried because he has permanent amnesia as to everything that happened on December 20th and 21st, although he is now and at all other times was sane, sound and competent.

---

* *Com. v. Morrison,* 266 Pa. 223, 109 Atl. 878; *Com. v. Myma,* 278 Pa. 505, 123 Atl. 486; *Com. v. Iacobino,* 319 Pa. 65, 69, 178 Atl. 823.

The tests for ability to stand trial are twofold: (1) the so-called common law test, and (2) the tests set forth in the Mental Health Act of 1951, June 12, P. L. 533, §101, 50 P.S. §1071.

It is a well established rule that one who is charged with a crime and who, before or during trial, is found to be insane, or mentally ill and mentally incapable of standing trial, may not be tried (or after conviction may not be sentenced or executed) while thus incapacitated. *Commonwealth ex rel. Hilberry v. Maroney,* 417 Pa. 534, 207 A. 2d 794; *Commonwealth v. Novak,* 395 Pa. 199, 150 A. 2d 102; *Commonwealth v. Moon,* 383 Pa. 18, 117 A. 2d 96; *Commonwealth v. Scovern,* 292 Pa. 26, 140 Atl. 611; 4 Blackstone, Commentaries, section 24.

In *Commonwealth v. Novak,* 395 Pa., supra, the Court said (page 205): " '. . ., the test at common law and employed by the courts in determining the mental capacity of a defendant to stand trial or to be sentenced or executed is not the M'Naghten "right or wrong" test but whether the defendant is able to comprehend his position and make a rational defense.': Commonwealth v. Moon, 383 Pa. 18, 23, 117 A. 2d 96."

In other words, the accused must either be insane or so mentally ill as to be unable (a) to comprehend that he is accused of the terrible crime of murder and (b) to cooperate with his counsel in making a rational defense. *Commonwealth ex rel. Hilberry v. Maroney,* 417 Pa., supra.

The facts in this case do not bring it within the foregoing authorities, or the principles enunciated therein.

### The Mental Health Act

Section 342* of this Act provides: "Whenever any person charged with crime, upon production or appear-

---

* Cf. also §343(c) which provides for the commitment of a convicted criminal in lieu of sentence.

ance before the court, appears to be *mentally ill*[*] or *in need of care in a mental hospital,* the court shall designate a responsible person to apply for his commitment, or for his commitment for observation, treatment and diagnosis, by order of such court. . . ."

"Mental illness" is defined in §102(11) as: ". . . an illness which so lessens the capacity of a person to use his customary self-control, judgment and discretion in the conduct of his affairs and social relations *as to make it necessary or advisable to be under care.*"

In *Commonwealth v. Moon,* 383 Pa., supra, this Court stated that the definition of the term "mental illness" as hereinabove quoted is, under the circumstances set forth in the Act, broader than the term "legal insanity."

Defendant is not within the terms of the Mental Health Act for two reasons: (1) he admittedly is not "mentally ill" or "in need of care in a mental hospital" and (2) he has not elected, nor has the Court or anyone in his behalf elected, nor has the Court appointed a person or a commission to proceed in accordance with the Mental Health Act to invoke the relief provided for in and by that Act, viz., commitment to a mental hospital. Instead, defendant has chosen to proceed by way of habeas corpus before trial, *invoking,* not the aforesaid Mental Health relief, but *the Common Law test, which he attempts to broaden by incorporating in and adding thereto* the definitions of mental illness set forth in the Mental Health Act.

We are of the opinion that the common law test and the provisions of the Mental Health Act are complementary and the Act applies (a) only where mental illness as defined in the Mental Health Act exists, and (b) where the alleged criminal is in need of hospitalization and commitment thereunder. In other

---

[*] Italics throughout, ours.

words, the common law test is, *in situations such as the present,* broader than the tests contained in the Mental Health Act, in that *it is possible there may be reasons for a stay of proceedings,* other than that of statutory mental illness.

Nevertheless, we are constrained to hold that defendant is *not entitled* at this time (1) to a discharge from the indictment for murder, or (2) to a stay of proceedings under the aforesaid common law test or under the Mental Health Act. This defendant (we repeat) is able to comprehend his position as one accused of murder, is fully capable of understanding the gravity of the criminal proceedings against him, and is as able to cooperate with his counsel in making a rational defense as is any defendant who alleges that at the time of the crime he was insane or very intoxicated or completely drugged, or a defendant whose mind allegedly went blank or who blacked out or who panicked and contends or testifies that he does not remember anything.

We further note that defendant contends on the one hand that his amnesia is permanent (although the lower Court wisely refused to find this as a fact); and on the other hand, that criminal proceedings be stayed until such time as he recovers his memory. If in fact the condition of amnesia *is permanent,* defendant's contention (1) would require Courts to hold that such amnesia will permanently, completely and absolutely *negate all* criminal responsibility and (2) will turn over the determination of crime and criminal liability to psychiatrists, whose opinions are usually based in large part upon defendant's self-serving statements, instead of to Courts and juries, and (3) will greatly jeopardize the safety and security of law-abiding citizens and render the protection of Society from crime and criminals far more difficult than ever before in modern history.

Unless an accused is legally insane, the law is not and should not be so unrealistic and foolish as to *permanently free, without acquittal* by a Judge or a jury, a person against whom a prima facie case of murder is made out.

Today it is too often forgotten (1) that the law was established and exists principally for the protection and safety of Society, and (2) that in order to accomplish this principal objective,* men and women who commit crimes or who are a menace to Society have to be confined in prison or in a mental hospital. This not only provides sorely needed protection for law-abiding citizens while the imprisonment or the confinement lasts, but imprisonment also acts as a deterrent to prospective criminals.

We further note that Cummins is not entitled to bail. Pennsylvania Constitution, Art. I, §14; *Commonwealth ex rel. Alberti v. Boyle,* 412 Pa. 398, 195 A. 2d 97. However, the grant or denial of bail is an appealable order.

Order affirmed.

Mr. Justice JONES concurs in the result.

Mr. Justice ROBERTS concurs in the result on the ground that petitioner has set forth no facts and made no allegations entitling him to relief at this stage of the proceedings by writ of habeas corpus.

Mr. Justice MUSMANNO dissents.

----

DISSENTING OPINION BY MR. JUSTICE COHEN:

This appeal is from an order of the court dismissing a pretrial petition for a writ of habeas corpus. Since the appellant-defendant does not question the lower court's determination that a prima facie case of

----

* Rehabilitation of a criminal is, of course, important and very desirable, but the protection and safety of Society is the principal objective of the criminal law and is paramount!

murder against defendant has been made out by the evidence, I would do nothing more than quash this appeal, thereby requiring the defendant to stand trial.

To allow appeals in situations such as this, places upon the courts an unsurmountable burden and provides defendants with a facility for delay.

I feel compelled to go further and voice my complete disagreement with what the majority has to say. The majority thoroughly fails to recognize that the constitutional right to counsel would be a sham if defense counsel were not able to prepare a proper defense. It is possible that this crime was not committed exactly as the circumstantial evidence proves. While a prima facie case of murder in the first degree has been established by the evidence presented to the lower court, the majority's determination completely prevents the presentation of any defense which would dispel the conclusions arrived at from the circumstances.

The lower court found that defendant was not feigning a loss of memory, but it could not determine whether the loss of memory would or would not be permanent. This substantially established the right of the accused to at least secure reasonable continuances. This entire problem was evaluated in an exhaustive law review note entitled, "Amnesia: A Case Study in the Limits of Particular Justice", 71 Yale L.J. 109 (1961). A superficial reading of this article will disclose that more consideration is due this situation than that given by the majority. However, as I have observed, this appeal is interlocutory and should be quashed. Not to do so will require two trials when there is an allegation of a loss of memory. Even the majority's zeal to prevent "coddling of criminals" should not serve as a vehicle to circumvent our recent unanimous opinion in *Commonwealth ex rel. Fisher v. Stitzel*, 418 Pa. 356, 211 A. 2d 457 (1965).

I dissent.