Russell M. POLSTON, Appellant
(Defendant),

v.

The STATE of Wyoming, Appellee
(Plaintiff).

No. 83–148.

Supreme Court of Wyoming.

June 15, 1984.

Rehearing Denied July 5, 1984.

Leonard D. Munker, State Public Defender; Sylvia Lee Hackl, Appellate Counsel, Wyoming Public Defender Program; Gerald M. Gallivan, Director, Wyoming Defender Aid Program; and Gerald P. Luckhaupt, Student Intern, for appellant; oral argument presented by Gerald P. Luckhaupt.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Margaret M. White, Asst. Atty. Gen., for appellee; oral argument presented by Margaret M. White.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

CARDINE, Justice.

Russell Polston appeals his conviction of mayhem pursuant to § 6–4–601, W.S.1977 [1] and his sentence to the Wyoming State Penitentiary for a term of not less than three nor more than ten years with the last three months thereof required to be served at the Wyoming State Hospital in the alcohol and drug abuse program.

---

1. Section 6–4–601, W.S.1977, in effect at the time of this offense, provided:

"Whoever with malicious intent to maim or disfigure, cuts, bites or slits the nose, ear or lip, cuts out or disables the tongue, puts out or destroys an eye, cuts off or disables a limb or any member of another person, is guilty of mayhem, and shall be imprisoned in the penitentiary not more than fourteen (14) years."

We will modify the sentence and affirm the judgment as modified.

## I

The first issue we consider is, as stated by appellant:

"The evidence was insufficient to support appellant's conviction for mayhem. Thus the trial court erred in not granting appellant's motions for judgment of acquittal as the evidence was not sufficient to establish that appellant had the requisite 'malicious intent to disfigure' * * * *"

■ In ruling upon a motion for judgment of acquittal, which is addressed to questions of sufficiency of evidence, we adhere to our long-established rule that if, viewing the evidence presented in a light most favorable to the prosecution, leaving out of consideration any evidence in conflict therewith, and drawing all possible, reasonable inferences therefrom, there exists substantial evidence which would support a conviction, the question is for the jury; and if it returns a conviction, its verdict, at least with respect to sufficiency of evidence, must be affirmed. *Murray v. State*, Wyo., 671 P.2d 320 (1983).

"'* * * Stated another way—it is not whether the evidence establishes guilt beyond a reasonable doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State. * * *'" *Grabill v. State*, Wyo., 621 P.2d 802, 803 (1980).

The evening of December 18, 1982, Russell Polston, appellant, and his girl friend Virginia "Ginger" Olson attended a party at the home of a friend. Appellant was drinking heavily and, in his words, became "very drunk." When Ginger was in the bathroom, a man opened the door. Appellant became angry, "ticked off," and said something to Ginger about it. She left the party with a girl friend, going to a nightclub in Newcastle, Wyoming.

A short time later, appellant left the party and appeared at the nightclub, walking around, asking about and looking for Ginger. He found her dancing with another man, grabbed her by the arm, was angry, pulled her away and was talking to her as they left the dance floor. The man who had been dancing with Ginger was walking behind them when suddenly appellant turned around, punched him alongside the head, and then took another swing that missed as the man's glasses fell off. Ginger left the nightclub with a girl friend, upset and crying.

A short time passed, and appellant soon was involved in an argument with another patron of the nightclub. Someone stepped between them to "break it up," and appellant jumped on him. There was a fight. Appellant was drunk, stumbling, was kicked in the head, and apparently knocked unconscious. In a short time appellant was conscious and then was put out the back door of the nightclub.

A Miss Cox walked with appellant from the back to the front of the nightclub parking area. She decided that, because of his drinking, he should not operate a vehicle and that she would drive him home. They walked to his pickup. Appellant entered the passenger side of the pickup and sat on the seat. Virginia Olson had walked up near the rear of the pickup. Suddenly appellant yelled "Ginger," jumped out of the pickup, ran to the rear of it, where in a "split second" he was on top of Ginger (Miss Olson), his body at an angle, his head over hers. Miss Olson cried out or yelled. According to Miss Cox, appellant had bitten off Miss Olson's nose at that time. Some people across the street heard Miss Olson yell. They ran over to the scene of this incident, grabbed appellant but could not pull him off her. One of the men hit him alongside of the head, and he went limp. They then pulled him off, and he was helped into his truck. Miss Cox, in driving him home, noted that he spit something out, but thought it was blood. It was two-thirds of Miss Olson's nose he spit out on the floor of the truck.

The next morning, while driving his pickup, appellant was arrested by a deputy sheriff. The deputy found Virginia Olson's nose on the floor of the pickup. He put the nose in a vial of cracked ice and sent it to the hospital in South Dakota, to which Miss Olson had been admitted. The nose could not be reattached. A photograph of the nose was received into evidence.

Mayhem, a specific intent crime, requires for conviction a "malicious intent to maim or disfigure," § 6–4–601, supra. We have long held that,

> " 'When a statute makes an offense to consist of an act combined with a particular intent, that intent is just as necessary to be proved as the act itself, and must be found by the jury, as matter of fact, before a conviction can be had. * * *' "

*Bryant v. State,* 7 Wyo. 311, 318, 56 P. 596, 597 (1899).

Specific intent being a state of mind ordinarily must be proved by circumstantial evidence. 21 Am.Jur.2d Criminal Law § 130. With respect to the proof required, we said:

> "* * * it was unnecessary to prove the specific intent by direct, positive, and independent evidence; but, as the court remarked, by quoting from one of its own earlier decisions, 'The jury may draw the inference, as they draw all other inferences, from any facts in evidence which to their minds fairly prove its existence,' * * *." Id., 56 P. at 597.

▮ Miss Olson, who was married to appellant at the time of trial, testified that what occurred was an accident. However, she admitted on cross-examination that she had not claimed the incident was an accident when she testified at the preliminary hearing. Appellant, testifying in his own behalf, admitted that he was "ticked off" over the bathroom incident earlier in the evening. Other witnesses testified that appellant was angry when he grabbed Miss Olson's arm, stopped her from dancing, and forced her off the dance floor. Whatever he said to her at that time, she was upset and crying as she left the nightclub. Appellant was then involved in a second fight from which one could reasonably infer he might be further angered. Next, while seated in his pickup, he noticed Miss Olson standing near the rear of the pickup. Miss Cox, who was present, testified that appellant yelled "Ginger" and was "out of the pickup in a split second." "He was running around the end of the pickup where Ginger was at." "And he had her on the ground, was doing the damage, or whatever—I mean he was on top of her." "After Ginger yelled and after that they came over, some people came over and pulled Russ off and some people helped Ginger up off the ground." A doctor testified to the considerable force required in biting to break the skin and to the difficulty involved in biting off the nose.

From this evidence the jury could reasonably infer that appellant was angry the entire evening. He expressed his anger over Miss Olson being in the bathroom when the bathroom door was opened; he was in two fights involving physical violence; he forcibly stopped Miss Olson from dancing with another man and took her crying off the dance floor. His being ejected from the nightclub through the back door was a culmination of all that had occurred; and when he saw Miss Olson, who in his mind was the cause of all his anger, the physical violence, he yelled at her, grabbed her and put her down on the ground and bit off two-thirds of her nose with the deliberate intention of maiming or disfiguring her. The jury found this a more reasonable inference than that the occurrence was accidental. That was the function of the jury, and we will not retry the case on appeal. There was evidence from which the jury could find "malicious intent to maim or disfigure," and substantial evidence supporting the conviction.

## II

Appellant raises a second issue, stating: "The trial court erred by refusing to instruct the jury as to automatism or unconsciousness, which theory was offered in defendant's Instruction A and so

prejudiced the defendant thereby as to be a denial of \* \* \* due process \* \* \*."

The defense of unconsciousness and the defense of insanity are not the same, *Carter v. State*, Okla.Cr.App., 376 P.2d 351 (1962), although both involve an abnormal mental condition. They differ in statutory and other definition, the rules governing pleas and proof, and their treatment by the courts. The statute [2] providing the defense of not guilty by reason of "insanity" was repealed by the legislature with the adoption of § 7–11–305(a), W.S.1977 [3] which substituted therefor the defense of not guilty by reason of "mental illness or deficiency."

Mental deficiency is defined as, among other things:

"\* \* \* [A] defect attributable to \* \* \* brain damage \* \* \*." Section 7–11–301(a)(iii), W.S.1977.

If the abnormal mental condition raised as a defense is a "mental illness or deficiency," then defendant may not introduce evidence to establish this defense without first entering a plea of "not guilty by reason of mental illness or deficiency." Upon entry of this plea, § 7–11–303, W.S.1977,[4] provides for a court-ordered mental examination of defendant with reports of the results of the examination being provided to both the prosecution and defense.

In *Fulcher v. State*, Wyo., 633 P.2d 142 (1981), over a vigorous dissent by Justice

John Raper, Retired, we became one of a few states that recognize the abnormal mental condition called "automatism" caused by brain injury as a defense in itself, separate and apart from the defense of not guilty because of "mental illness or deficiency" provided by § 7–11–305(a), supra. We approved the defense where there was "unconsciousness" resulting from "brain damage" caused by "concussion," but held that the "brain damage" must be only a "simple brain trauma with no permanent aftereffects"; and we stated further that brain damage causing a "serious and irreversible condition having an impact upon the ability of the person to function \* \* \* far more significant than a temporary and transitory condition," was a "mental deficiency" within § 7–11–301(a)(iii), supra, requiring a plea beforehand of not guilty by reason of mental illness or deficiency. *Fulcher v. State*, supra.

 The effect of proof of the defense of "unconsciousness" causing an automatistic state is that the action resulting in the crime charged is not voluntary; that therefore the actor cannot entertain either a specific or general intent necessary to guilt of a crime. The defense of automatism may be raised upon a plea of not guilty as was done in this case. Being a special defense, however, involving an abnormal mental condition, the prosecution should have reasonable notice of it before

---

2. Section 7–240, W.S.1957.

3. Section 7–11–305(a), W.S.1977, provides:

"(a) When a defendant couples a plea of not guilty with a plea of not guilty by reason of mental illness or deficiency, there shall be a sequential order of proof before the same jury in a continuous trial. First, evidence shall be heard and a special verdict taken on whether the defendant in fact committed the acts charged in the alleged criminal offense. If by special verdict the jury finds that the defendant did in fact commit such acts, then evidence shall be heard on the remaining elements of the alleged criminal offense and on the issue of the mental responsibility of the defendant. In addition to other forms of verdict submitted to the jury, the court shall submit a verdict by which the jury may find the defendant not guilty by reason of mental illness or deficiency excluding responsibility."

4. Section 7–11–303(b), W.S.1977, provides:

"(b) The district court shall order an examination of the accused by a designated examiner. The order may include, but is not limited to, an examination at the Wyoming state hospital on an inpatient or outpatient basis, the utilization of local mental health centers on an inpatient or outpatient basis, or the examination of the accused, should he be incarcerated for any reason, at his place of detention. In selecting the examination site, the court may consider proximity to the court, availability of an examiner or examiners, and the necessity for security precautions. If the order provides for commitment of the accused to a designated facility, the commitment shall continue no longer than a thirty (30) day period for the study of the mental condition of the accused."

trial and an opportunity for examination of defendant. Although not controlling in this case, we herewith announce that in all future cases, the defense of automatism may not be raised unless such notice and opportunity for examination is provided.

■ The elements necessary to establish the defense of automatism under the facts of this case are the following:

(a) The actor must be a person with a healthy mind

(b) who because of a concussion

(c) resulting from a brain injury

(d) that is a simple brain trauma with no permanent aftereffects

(e) acts in a state of unconsciousness

(f) in which his actions are devoid of criminal intent. *State v. Fulcher*, supra.

■ We have heretofore held in cases where the defense of insanity was raised that the defendant was presumed to be sane and, therefore, defendant carried the burden of proving insanity. Once evidence was introduced, however, reasonably demonstrating insanity, it then was the burden of the State to prove defendant's sanity beyond a reasonable doubt. *Reilly v. State*, Wyo., 496 P.2d 899, rehearing denied 498 P.2d 1236 (1972). With respect to a plea of not guilty by reason of mental illness or deficiency, § 7–11–305(b), W.S. 1977, provides:

"(b) The prosecution shall prove beyond a reasonable doubt all the elements of the offense charged and the mental responsibility of the defendant. However, every defendant is presumed to be mentally responsible and the burden of first going forward and entering evidence on the issue of mental responsibility is upon the defendant."

We are not bound in this case by the rules governing sanity pleas or pleas of not guilty by reason of mental illness or deficiency for, as we have said, the defenses are not the same as where the defense of automatism is asserted. *Carter v. State*, supra. We agree with *Commonwealth ex rel. Cummins v. Price*, 421 Pa. 396, 218

A.2d 758 (1966), wherein, quoting from another case, it is stated:

" '* * * The general presumption is that every man is normal and is possessed of ordinary faculties; such defenses as intoxication, insanity and aphasia (or a mind not conscious of its acts) are affirmative defenses, and the burden is on the defendant to establish them. * *' " 218 A.2d at 760.

We therefore hold that a defendant who raises the automatism defense is presumed to be a person with a healthy mind; that the burden is upon the defendant who raises the defense of automatism to prove the elements necessary to establish the defense; and the burden remains with the defendant throughout the trial.

■ A concussion is defined as

"The condition or damage resulting from a violent impact or jarring of a tissue, especially of the brain. A concussion of the brain is marked by slow breathing, weak pulse, vomiting, unconsciousness, etc." 1 Schmidt's Attorneys' Dictionary of Medicine (1984), p. C–206.

3A Gordy-Gray, Attorneys' Textbook of Medicine (3rd Ed.1983), states that,

" '* * * [C]lassic manifestations of cerebral concussion include 1) loss of consciousness; 2) amnesia, and 3) disturbances of nervous system mechanisms." Section 88.20

Section 88.22:

"Amnesia may be anterograde or retrograde, meaning that the patient won't remember anything about a variable point of time extending both before or after concussion. * * *' "

Section 88.23:

"Many other disturbances are observed in concussion but they are variable so that no single symptom can be considered characteristic. Among them are nausea; vomiting; alterations in pulse rate, blood pressure and temperature; dizziness; headaches; disturbances of respiration; tremors; and sensations of heat and cold. * * *

"Two signs which are observed in all cases of concussion, however, are apathy and weakness."

Amnesia is defined as

"Loss of memory as a result of organic trauma, delirium lesions of the diencephalon area of the brain, hysteria or epilepsy. Functionally, identity loss can represent a means of coping with neurotic conflict. Three types of amnesia are: anterograde (inability to retain new impressions; may be a feature of senility); retrograde (failure to recall prior experiences); lacunar (loss of memory for certain periods of life). * * *" Black's Law Dictionary (5th Ed.1979), p. 76.

Automatism is defined as

"Behavior performed in a state of mental unconsciousness or dissociation without full awareness, i.e., somnambulism, fugues. [The] term is applied to actions or conduct of an individual apparently occurring without will, purpose, or reasoned intention on his part; a condition sometimes observed in persons who, without being actually insane, suffer from an obscuration of the mental faculties, loss of volition or of memory, or kindred affections. 'Ambulatory automatism' describes the pathological impulse to purposeless and irresponsible wanderings from place to place often characteristic of patients suffering from loss of memory with dissociation of personality. * * *" Black's Law Dictionary, supra, p. 122.

One suffering from amnesia may have no memory of events for a period of time both before and after the alleged occurrence. The period of time covered by memory loss may be as short as a few minutes and as long as several years. Merely because one has no memory of an event does not establish that the event occurred in an automatisic state in which there was no voluntary action. In *United States ex rel. Parson v. Anderson,* 354 F.Supp. 1060 (D.Del.1972), cert. denied, 414 U.S. 1072, 94 S.Ct. 586, 38 L.Ed.2d 479 (1973), Parson's memory of past events was intact except for a few hours before the crime and a few hours after his arrest. He could not remember any of the events during this period of time. The court noted that amnesia was not an unusual phenomena and quoting from other cases stated that:

"* * * [C]ases abound with commonly used statements or testimony by a person accused or convicted of murder that 'I don't remember anything'; 'my mind went blank'; 'I blacked out'; 'I panicked and don't remember what I did or anything that happened.'" 354 F.Supp. at 1071.

Thus a concussion and lack of memory by themselves are not sufficient to establish that the individual during the period of time he is unable to recall was acting in an automatistic state. That individual during that period of time may have been fully conscious, aware, angry, acting purposely, and with intent to maim and disfigure, and later not recall any of the events. The inability to recall may have been a means of "coping with neurotic conflict"; an inability to accept or face the enormity of his actions that resulted in maiming and disfiguring another human being by biting off two-thirds of a nose; an inability to accept blame or responsibility for such action.

In *Goodman v. State,* Wyo., 573 P.2d 400, 409 (1977), citing from 23A C.J.S. Criminal Law § 1313, we said,

" 'No instruction should be given which is not reasonably supported by the evidence, or which is not based on some theory logically deducible from some portion of the evidence. Thus an instruction should not be given on evidence which at the most merely raises a possibility or a conjecture, or which is inconsistent with the physical facts, or which is so inconsistent and its connection so slight that the court may set aside a verdict thereon. * * * For the purpose of determining whether an instruction in favor of accused should be given, the court must view the evidence in a light as favorable to him as is justifiable, and accused's testimony must be taken as entirely true.'" (Emphasis omitted.)

We look to appellant's testimony which we accept as true. It was as follows:

"Q. How drunk do you feel you were that night?

"A. The—I don't know how to put it. I have never been that drunk in my life.

"Q. Okay. Drunk?

"A. Yes; very drunk."

And with respect to his memory of what occurred, appellant, after testifying he had been drinking whiskey early in the evening, said he did not remember anything, not from the time he received the kick to the head, but from the time of leaving the party at a friend's house in a drunken condition.

Appellant thereafter was in a fight in which he was kicked in the head. The only evidence in the entire trial that appellant may have suffered a concussion before he bit off Miss Olson's nose comes from this single question and answer on cross-examination,

"Q. And Mr. Polston was knocked out?

"A. Yes, sir."

Appellant testified that he was unable to remember the events of the evening beginning sometime before the fight and kick to the head and ending with the time Janice Cox insisted on driving him home after the incident. He said he did not recall biting off two-thirds of Miss Olson's nose. This is the entire evidence upon which appellant relies to establish that the court was required as a matter of law to instruct upon automatism. There was no evidence that he suffered a concussion except that he was unconscious for a short time. We do not know whether the unconsciousness resulted from the blow to the head or his extreme drunken condition. There was no medical examination or x-rays or evidence of skull fracture or head injury. Appellant received no medical treatment. A concussion was never diagnosed. If he suffered a concussion, there was no testimony that it was a simple brain trauma with no permanent aftereffects as required by *Fulcher v. State*, supra. If it was more significant than a temporary and transitory condition, he could not raise this defense. There was

no evidence that appellant was devoid of criminal intent as required by *Fulcher v. State*, supra. Not a single witness, medical or otherwise, testified to facts that could be said to reasonably place before the jury the elements necessary to raise the defense of automatism. The evidence here raises no more than a possibility or conjecture, and we have said that is not enough to support an instruction to the jury. *Goodman v. State*, supra.

The defense of automatism is provided by legislative enactment in California. Whether it was error to fail to instruct the jury on this defense was considered in *People v. Ray*, 14 Cal.3d 20, 120 Cal.Rptr. 377, 533 P.2d 1017 (1975), a case in which defendant relied upon evidence,

" * * * that four hours before the killing he had been rendered unconscious as the result of a beating by the victim and that during the altercation immediately preceding the killing the victim inflicted other wounds which, according to defendant, when combined with his previous wound, rendered him unconscious." 120 Cal.Rptr. at 379, 533 P.2d at 1019.

Defendant contended the court was required to instruct sua sponte on the defense of unconsciousness. The California court, quoting from another case, agreed, stating,

" 'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. * * *' * * * The duty to instruct * * * includes * * * the defense of involuntary unconsciousness but only when it appears that the defendant is relying on that defense, 'or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' * * *." 120 Cal.Rptr. at 379, 533 P.2d at 1019.

An expert witness testified that defendant had taken drugs and that the drug level of defendant in conjunction with a concussion of the brain would result in difficulty in thought transmissions and in

the formation of sound judgments. Lay witnesses testified that defendant appeared dazed at the times of the encounters.

The court then held that the trial court was not required to instruct on the defense of automatism since no expert testified that following the first altercation defendant thereafter continued to function in an unconscious state as a result of his experiences.

The court further stated that such an instruction is not required where it would have been inconsistent with the complete defense asserted by defendant that he killed only in self-defense.

In the above case, the California court held that a blow to the head with a claimed unconscious state at the time of the homicide even when supported by psychiatric testimony was not enough to require giving an automatism instruction where no witness testified that defendant was functioning in an unconscious state, and where the defendant relied upon self-defense in defending at trial. We have no difficulty holding that a blow to the head, coupled with a claimed loss of memory and nothing more in the way of evidence, does not require the giving of an instruction on automatism, especially where, as here, the defendant also defends claiming the biting off of Miss Olson's nose was an accident. Miss Olson testified in support of this theory in considerable detail as to how her leg gave way, she fell to the ground, and as she struck the ground, the accident occurred in which appellant bit off her nose. The trial judge properly refused the instruction.

Though unnecessary to our decision, we note in passing, the overwhelming evidence of appellant's extreme drunken condition. His lack of memory did not commence with the blow to the head but commenced more than an hour earlier when he left the party at which he was drinking whiskey—in his words, drinking heavily, becoming the drunkest he had ever been.

 The defense of automatism is not available if the unconscious condition

results primarily from voluntary intoxication. Section 6-1-116, W.S.1977, in effect at the time of this offense, provided:

" * * * Where a crime rests in intention, the inebriated condition of the defendant at the time of committing the offense may be proven to the jury, as bearing upon the question of intention."

Voluntary intoxication resulting in unconsciousness is not a complete defense as unconsciousness resulting from other causes might be. Voluntary intoxication can only negate a specific intent, permitting a finding of guilt of other or lesser included general intent crimes. *People v. Baker*, 42 Cal.2d 550, 268 P.2d 705 (1954). Where unconsciousness results primarily from self-induced intoxication, the defense of automatism is not available but rather the defense is that of intoxication. In this case, at appellant's request, the jury was fully instructed upon the effect of intoxication on existence of the intent required as an element of the crime and, nevertheless, found that appellant possessed the specific intent to maim or disfigure Miss Olson. Had the jury accepted appellant's claim of drunkenness and loss of memory, they would have found him guilty of a lesser included general intent crime. This the jury declined to do.

We note here that subsequent to our decision in *Fulcher v. State*, supra, and the occurrence of this incident, the legislature amended § 7-11-304(a), W.S.1977, and defined "mental illness or deficiency" to mean:

" * * * only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality and that are not attributable primarily to self-induced intoxication as defined by W.S. 6-1-202(c)."

Although the amended statute does not govern the disposition of this case, we do note the legislature's apparent intent that this defense not be available where the mental state is "attributable primarily to

self-induced intoxication," § 7–11–304(a), supra.

Appellee raises an additional issue:

Did the sentencing court have jurisdiction to sentence the defendant to three months in the Wyoming State Hospital?

 The trial court sentenced appellant to not less than three years and not more than ten years in the Wyoming State Penitentiary ordering further that the last three months of the sentence be served at the Wyoming State Hospital, Evanston, Wyoming, in the alcohol and drug abuse program. The court acted beyond its jurisdiction in including a mandate requiring that the last three months of the sentence be served at the state hospital.

Appellant was convicted of violation of § 6-4-601, W.S.1977, which provides a penalty of imprisonment in the penitentiary for a term of not more than fourteen years. In *Dean v. State*, Wyo., 668 P.2d 639, 645–646 (1983), we said:

"The court may order commitment of a mentally ill person to the state hospital for treatment pursuant to the proceedings set forth in § 25–10–101, et seq., W.S.1977; it may order an examination of a defendant at the state hospital pursuant to § 7–11–304, W.S.1977 (see fn. 2); it may order custody, care and treatment of a defendant at the state hospital pursuant to § 7–11–306, W.S.1977; and there may be other specific statutory provisions authorizing the court to order a person to become a patient at the state hospital. But jurisdiction has not been given to the trial court to sentence a person to the Wyoming State Hospital as part of the penalty for criminal activity. * * *"

The sentence of three to ten years was a lawful and proper sentence. The provision that the final three months of the sentence be served at the Wyoming State Hospital

at Evanston, Wyoming, exceeded the jurisdiction of the court and it is stricken. There remains the sentence of three to ten years and this sentence must be served in the Wyoming State Penitentiary at Rawlins, Wyoming. This is in accord with the statute under which appellant was convicted. The judgment and sentence, therefore, is modified by striking therefrom the paragraph requiring the last three months of the sentence to be served at the state hospital; and, with this modification, the judgment and sentence is affirmed.

ROSE, Justice, dissenting.

I am unable to agree with the conclusion of the majority that appellant Russell Polston had no right to a jury determination concerning the validity of his defense theory.

In *Fulcher v. State*, Wyo., 633 P.2d 142 (1981), we recognized automatism to be a complete defense to criminal activity. We set out in that case the following definition of automatism:

" * * * Automatism is the state of a person who, though capable of action, is not conscious of what he is doing. While in an automatistic state, an individual performs complex actions without an exercise of will. Because these actions are performed in a state of unconsciousness, they are involuntary. Automatistic behavior may be followed by complete or partial inability to recall the actions performed while unconscious. Thus, a person who acts automatically does so without intent, exercise of free will, or knowledge of the act." 633 P.2d at 145.

The question before the court in the instant case is whether the evidence was sufficient to entitle appellant to submit to the jury Wyoming's Pattern Jury Instruction on automatism.[1] This court discussed the quantum of evidence necessary to justify instructing the jury on a particular issue

---

1. Wyoming Pattern Jury Instruction, Criminal 4.301, Unconscious Acts, provides:

"Where a person commits an act without being conscious thereof, such act is not criminal even though, if committed by a person who was conscious, it would be a crime.

"This rule of law applies only to cases of the unconsciousness of person of sound mind, in which there is no functioning of the conscious mind."

The Use Note states:

"Specific examples of where this instruction would apply include: sleep walkers or per-

in *Goodman v. State,* Wyo., 573 P.2d 400 (1977). There we said that due process requires an instruction on the defendant's theory of the case if the offered instruction sufficiently informs the jury of defendant's theory and if there is *"competent* evidence in the record to support the theory." 573 P.2d at 408. We quoted with approval the following passage from 23A C.J.S. Criminal Law § 1313, pp. 776–778:

"* * * [I]t is generally recognized that any evidence which will authorize the jury to find on it, although in the opinion of the court it may be weak, inconclusive, or unworthy of belief, is sufficient to justify an instruction on the issue raised by such evidence; and even positive testimony is not required, for it is sufficient if the fact in issue reasonably may be inferred from circumstances proved. However, in order to warrant giving an instruction, the evidence should be sufficient fairly to raise the question involved therein.

"No instruction should be given which is not reasonably supported by the evidence, or which is not based on some theory logically deducible from some portion of the evidence. Thus an instruction should not be given on evidence which at the most merely raises a possibility or a conjecture, or which is inconsistent with the physical facts, or which is so inconsistent and its connection so slight that the court may set aside a verdict thereon. * * * For the purpose of determining whether an instruction in favor of accused should be given, the court must view the evidence in a light as favorable to him as is justifiable and accused's testimony must be taken as entirely true." 533 P.2d at 409.

Most jurisdictions which recognize the defense have concluded that loss of memory, in and of itself, is not sufficient to mandate an automatism instruction. *People v. Morrall,* 144 Cal.App.3d 406, 192 Cal.Rptr. 601 (1983); *State v. Caddell,* 287 N.C. 266, 215 S.E.2d 348 (1975). However, evidence of loss of memory in combination with evidence of a blow to the head constitute a sufficient basis to submit the question to the jury. *People v. Morrall,* supra; *State v. Caddell,* supra; *People v. Ray,* 14 Cal.3d 20, 120 Cal.Rptr. 377, 533 P.2d 1017 (1975). The California Supreme Court in *People v. Sedeno,* 10 Cal.3d 703, 112 Cal. Rptr. 1, 518 P.2d 913 (1974), disapproved on other grounds in *People v. Flannel,* 25 Cal.3d 668, 160 Cal.Rptr. 84, 603 P.2d 1 (1980), set out the appropriate test:

"* * * An unconscious act within the contemplation of the Penal Code is one committed by a person who because of somnambulism, a blow on the head, or similar cause is not conscious of acting and whose act therefore cannot be deemed volitional." 112 Cal.Rptr. at 10, 518 P.2d at 922.

The majority rely on *People v. Ray,* supra, in holding that a blow to the head coupled with loss of memory is insufficient to support an instruction on automatism. In *People v. Ray,* however, the California Supreme Court was concerned with whether the trial court, on its own initiative, should have given an automatism instruction where the defendant claimed self-defense at trial and where no automatism instruction had been requested. The appellate court set out the standard governing the trial court's obligation to submit an unrequested instruction in such cases:

"* * * 'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. * * * The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary to the jury's understanding of the case.' [Citation.] The duty to instruct *sua sponte* on general principles closely and openly connected with the facts of a case includes an obligation to instruct on the defense of involuntary unconsciousness but only when it appears that the defendant is relying on that defense, 'or if there

___

sons suffering from the delirium of fever, epilepsy, a blow on the head or the involun-

tary taking of drugs or intoxicating liquor."

is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' (*People v. Sedeno* (1974) 10 Cal.3d 703, 716, 112 Cal.Rptr. 1, 10, 518 P.2d 913, 921)." 120 Cal.Rptr. at 379, 533 P.2d at 1019.

The court then concluded that an automatism instruction was not required under the facts of that case:

"Although defendant sustained a severe beating which left him unconscious following his initial confrontation with the victim, it taxes the imagination to give any credence to his contention that he remained unconscious during the following four hours and until the time he fired two bullets into the victim's head. The evidence is undisputed that defendant regained consciousness and drove his car away from the scene. * * * [E]ven defendant's own testimony does not support his claims of continuing unconsciousness. He stated that he remembered very clearly the events leading up to the shooting. * * *

"There is likewise no merit to the claim that defendant was unconscious as the result of wounds received in the second confrontation immediately prior to the killing. * * * Defendant described this encounter as a 'scuffle' * * *. No blows were struck * * *. Defendant described these events in sharp detail and he could not reasonably be deemed to have been rendered unconscious by these incidents. * * * Police officers who were on the scene almost immediately after the killing found defendant to be functioning normally." 120 Cal.Rptr. at 380, 533 P.2d at 1019–1020.

In the trial of the instant case, appellant presented evidence corresponding to the textbook symptoms of a concussion as described in the majority opinion on page 12. The bar patron, who delivered a karate kick to Polston's head shortly before the nose-biting incident, testified that he knocked out Polston. Appellant testified that he could not remember anything that had occurred for a period of time before and after the blow to his head. Furthermore, the bystander who hit appellant on the side of

the head in order to remove him from his girl friend testified that Polston was knocked unconscious or had passed out.

With regard to absence of criminal intent, Polston testified that he would never intentionally bite off Miss Olson's nose or disfigure her in any way. The victim herself testified that the incident was an accident and that Polston had not acted "on purpose."

Where two independent witnesses testified that appellant was unconscious shortly before and immediately after the nose-biting incident, where appellant testified that he had no memory of the incident, and where appellant and the victim both testified as to the unintentional nature of the incident, reasonable minds could disagree as to whether appellant's behavior was that of an automaton. Certainly, such evidence more than satisfies the test for an automatism instruction adopted by other courts.

The majority bolster their conclusion that the trial court properly refused the unconsciousness instruction by noting that appellant also defended the nose-biting incident as accidental. I see no inconsistency between accidental conduct and automatism, since both involve unintentional acts. More importantly, nothing precludes a defendant from presenting evidence at trial and seeking a jury determination on diverse defense theories. *Stevenson v. United States*, 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896). The assertion of a defense theory on appeal inconsistent with that asserted at trial bears only on the trial court's duty to submit an unrequested instruction sua sponte. *People v. Ray*, supra.

The majority say:

" * * * We do not know whether the unconsciousness resulted from the blow to the head or his extreme drunken condition."

And, further:

" * * * The inability to recall may have been a means of 'coping with neurotic conflict'; an inability to accept or face the enormity of his actions that resulted in maiming and disfiguring another human being * * *."

It must be remembered, however, that the jury, not this court, was the appropriate body to weigh the conflicting evidence and to determine whether appellant, in fact, acted unconsciously when he bit off his future wife's nose and further to determine the cause of such unconscious state. The fact that this court finds the appellant's evidence "weak, inconclusive, or unworthy of belief" should not strip the jury of its function to determine the validity of the offered defense. *Goodman v. State,* supra, 573 P.2d at 409.

In *Goodman,* we established a reasonable, evidential threshold for submitting the defendant's theory of the case to the jury. I believe that appellant Polston met this threshold and, therefore, would have reversed his conviction and remanded the case for a new trial.