**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Robert STEVENSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 14, 2013.

Filed April 5, 2013.

Patrick J. Connors, Public Defender, Media, for appellant.

George M. Green, Asst. Dist. Atty., Media, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., GANTMAN, J., and LAZARUS, J.

OPINION BY STEVENS, P.J.

Appellant, Robert Stevenson, files this appeal from the judgment of sentence entered in the Delaware County Court of Common Pleas, following his conviction of possession of methamphetamines with intent to deliver and possessing a firearm without a license. On appeal, Appellant contends that the trial court erred in denying his motion to suppress and in finding him competent to stand trial. We affirm.[1]

The trial court described its findings of fact as follows:

On August 13, 2004[,] Corporal James Lyman of the Pennsylvania State Police was patrolling Interstate 476 in Delaware County. At about 1:13 a.m. he stopped an RV [ (recreational vehicle) ] for a violation of the Motor Vehicle Code. The RV was a large two-axle vehicle with a kitchen and a bedroom. As he stopped the vehicle Corporal Lyman noticed the rear of the RV shaking and rocking back and forth. As he approached on foot he heard the sound of people moving within the vehicle.

---

1. The Commonwealth filed an application for post-submission communication, seeking to correct a mistake in its appellate brief. We grant the Commonwealth's application.

Corporal Lyman approached the driver's side window of the vehicle where [Appellant] was seated. Corporal Lyman asked [Appellant] for his license and registration. [Appellant] replied, "I'm only the driver." The driver's side window was open and Corporal Lyman saw [Appellant]'s hands shaking "tremendously." At the same time he smelled the odor of burning marijuana[3]. [Appellant] spoke rapidly and appeared "excitable" when he spoke. After a "frantic" search, [Appellant] produced his state of Delaware driver's license. Corporal Lyman asked [Appellant] to step from the vehicle and he complied. The odor became stronger as the door opened and [Appellant] exited. Cpl. Lyman asked [Appellant] about the odor and again [Appellant] said, "I'm only the driver."

---

[3] Corporal Lyman testified that he is familiar with the smell of burning marijuana by virtue of both his training and his experience in criminal arrests, investigations and convictions.

Corporal Lyman's partner, Trooper Trego, stood at the passenger side door where a female passenger sat. Corporal Lyman told [Appellant] that he had seen the RV rocking and shaking as he approached and he asked [Appellant] if there were any weapons on board. [Appellant] told him there was a gun in the RV and it was in a duffel bag beneath the passenger's feet. Corporal Lyman asked [Appellant] to produce his permit to carry a firearm and [Appellant] said that he didn't have one. Corporal Lyman called the Pennsylvania State Police barracks for additional assistance. Immediately thereafter he opened the doors to the RV and told the additional occupants to sit at the "dining" table inside and to keep their hands up.

The odor of burning marijuana in the RV was "overwhelming." After assistance arrived in the form of additional officers the duffel bag was retrieved and opened. It contained a loaded firearm[ and] Tupperware bowls containing marijuana, together with a scale. The RV was cleared of all of the known occupants. Four passengers alighted and joined [Appellant]. Corporal James Kemm, who arrived to assist, entered the RV and searched for any additional occupants. Upon entering, the trooper saw a bong and a pipe on the "dining" table. Corporal Kemm searched the vehicle for additional occupants and in the course of that search he found a bong and vacuum sealed bags filled with marijuana in the RV shower located at the rear of the vehicle. The occupants were all arrested and transported to the Media barracks and the RV was towed.

While the RV was still at the side of the highway a K–9 officer arrived and outside the vehicle the dog alerted to exterior rear and side panels of the vehicle. The dog then entered the interior of the RV and again alerted to the presence of drugs. Later, Corporal Lyman applied for a warrant to search the RV. The search pursuant to that warrant yielded, *inter alia*, large quantities of methamphetamine, five tanks of Nitrous Oxide, cocaine, LSD, marijuana and additional drug paraphernalia.

Trial Ct. Op. at 2–4 (citations omitted).

Following his arrest, Appellant filed pretrial motions with the trial court, including the suppression motion at issue in this appeal. Shortly after the trial court addressed the last of these motions in 2007, the court ordered a competency evaluation for Appellant due to his recent involvement in a motorcycle accident. Following a psychiatric report that indicated he had no memory of the accident or the 2004 arrest, Appellant filed a motion to declare that he was incompetent, and the trial

court scheduled a competency hearing. Following testimony from the psychiatrist and a neurologist, the court found Appellant incompetent to proceed to trial, but ordered a re-evaluation to take place a few months later. After reevaluation by the psychiatrist and neurologist, along with multiple administrations of the Bender–Gestalt II test,[2] the court scheduled a competency hearing for January 12, 2010. Appellant failed to produce the neurologist, however, and the hearing was canceled. The court instead considered the new reports and evaluations, and on April 5, 2010, lifted the stay after concluding that Appellant failed to demonstrate his incompetency.

A jury trial commenced, and Appellant was found guilty of the above crimes. The trial court sentenced Appellant to four to eight years' imprisonment, which included mandatory-minimum terms, followed by two years' probation.[3] The court denied Appellant's post-sentence motions, and this timely appeal followed.[4]

Appellant presents the following issues on appeal:

> Whether the [trial c]ourt erred when it refused to suppress the fruits of an illegal warrantless search of the recreational vehicle operated by [Appellant], where there was no probable cause or exigent circumstances justifying the search[?]
>
> Whether the [trial c]ourt abused its discretion by lifting the stay of the proceedings and finding [Appellant] competent to stand trial where two psychiatrists opined that he was not competent to proceed, and where no psychiatrists rebutted these opinions[?]

Appellant's Brief, at 5.

Appellant first contends that the evidence obtained from the search of the RV should have been suppressed. He claims that there was no probable cause to believe a crime was being committed at the time of the warrantless search. He avers there were no exigent circumstances justifying a warrantless search, as the passengers were out of the vehicle and the officers could have looked through the windows to see if there were other passengers. He concludes that the trial court erred when it denied his suppression motion. We disagree.

> Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Otterson*, 947 A.2d 1239, 1244 (Pa.Super.2008) (quoting *Commonwealth v. Brown*, 924 A.2d 1283, 1286 (Pa.Super.2007)).

 Appellant concedes that the court's factual findings are supported by the record. *See* Appellant's Brief, at 13.

---

2. The Bender–Gestalt II test is used to evaluate visual-motor integration, visuospatial skills, and perceptual-motor abilities. Springer, *Encyclopedia of Child Behavior and Development*, http://www.springerreference.com/docs/html/chapterdbid/179768.html (last visited Mar. 22, 2013).

3. The mandatory-minimum terms were imposed pursuant to 18 Pa.C.S. § 7508.

4. Appellant complied with the trial court's Pa.R.A.P. 1925(b) order, and the court filed a responsive opinion.

Thus, he challenges only the legal conclusions reached by the court as a result of its findings.

> Under the federal Constitution, law enforcement personnel may conduct a warrantless search of an automobile as long as probable cause exists. This rule, known as the automobile exception to the warrant requirement, is based on the inherent nature of vehicles—their mobility—and applies even if a vehicle is seized and immobilized. In Pennsylvania, however, we have not adopted the full federal automobile exception under Article I, Section 8. Warrantless vehicle searches in this Commonwealth must be accompanied not only by probable cause, but also by exigent circumstances beyond mere mobility; one without the other is insufficient. This dual requirement of probable cause plus exigency is an established part of our state constitutional jurisprudence.

*Commonwealth v. Hernandez*, 594 Pa. 319, 328, 935 A.2d 1275, 1280 (2007) (citations and quotations omitted).

▇▇▇ "Exigent circumstances arise where the need for prompt police action is imperative, either because evidence is likely to be destroyed ... or because there exists a threat of physical harm to police officers or other innocent individuals." *Commonwealth v. Copeland*, 955 A.2d 396, 400 (Pa.Super.2008) (quoting *Commonwealth v. Stewart*, 740 A.2d 712, 717 (Pa.Super.1999)). "[A] court must balance the individual's right to be free from unreasonable intrusions against the interest of society in quickly and adequately investigating crime and preventing the destruction of evidence." *Id.* (quoting *Stewart, supra* at 717). "[W]here there is potential danger to police or others in the context of a vehicle stop, exigency has been established for purposes of a warrantless search." *Hernandez*, 594 Pa. at 332, 935 A.2d at 1282.

▇▇▇ In the case *sub judice*, Appellant notified police during the traffic stop that there was a firearm on the passenger side of the car, for which he did not have a permit. An officer detected an "overwhelming" scent of marijuana, and he heard numerous people in the RV. This incident took place in the middle of the night.

Appellant argues that no exigent circumstances existed once the police separated the known occupants from the vehicle. He thus avers that, if the police were truly concerned about other people who may have been hiding in the RV, potentially with weapons, the police could simply have peered into the windows with a flashlight. We cannot agree with this proposition. Given the design of RVs, it is considerably riskier for police to look into the window of an RV than a standard passenger vehicle. It takes but a moment for police to glance through the windows of a standard passenger-vehicle and survey the scene, whereas an RV requires a more expansive search. Although the parties disagreed about the number of windows and their position on the RV, the RV indisputably was well over twenty feet long, requiring the police to look through multiple windows in the middle of the night for a longer period of time. Testimony also revealed that the RV had a master bedroom with a bed, another bed above the driver's cab, a kitchen table, and a shower. *See N.T.*, 11/14/06, at 13, 15, 19, 28. These features, combined with the recovered, unlicensed firearm and knowledge of drugs at the scene, made it reasonable for officers to believe that looking through the RV's windows for hidden passengers, especially late at night, was an inherently unsafe plan. *See Hernandez, supra; Copeland, supra.* Accordingly, the

trial court properly denied Appellant's suppression motion.

Next, Appellant suggests that the trial court erred in lifting the stay and finding him competent to stand trial. Appellant claims that two psychiatrists found him incompetent, whereas none found him competent. He contends that the record was definitive that he suffered from severe amnesia, which affected his ability to assist counsel during trial. He concludes that the trial court abused its discretion in lifting the stay. We disagree.

■■■ A defendant is presumed competent and it is his burden to show otherwise, the determination of which is within the sound discretion of the trial court. *Commonwealth v. Sanchez*, 589 Pa. 43, 64, 907 A.2d 477, 490 (2006) (citing *Commonwealth v. Sam*, 535 Pa. 350, 357, 635 A.2d 603, 606 (1993); *Commonwealth v. Chopak*, 532 Pa. 227, 235, 615 A.2d 696, 700 (1992)). When a competency hearing takes place, incompetency may be established by a preponderance of the evidence. 50 P.S. § 7402(d). The sensitive nature of competency determinations requires the appellate courts to afford great deference to the conclusions of the trial court, which has had the opportunity to observe the defendant personally. *Id.* (citing *Chopak, supra*). When the record supports the trial court's determination, we will not disturb it. *Id.* at 65, 907 A.2d at 490.

A panel of this Court has recently discussed, in detail, the application of amnesia claims to incompetency determinations:

> Pennsylvania's definition of incompetence is statutory:
>
> > [W]henever a person who has been charged with a crime is found to be substantially unable to understand the nature or object of the proceedings against him or to participate and assist in his defense, he shall be deemed incompetent to be tried, convicted or

sentenced so long as such incapacity continues.

> 50 P.S. § 7402(a). In order to establish incompetence, an appellant has the burden of proving that he was either unable to understand the nature of the proceedings against him or to participate in his own defense. *Commonwealth v. Santiago*, 579 Pa. 46, 67, 855 A.2d 682, 694 (2004).
>
> We have explained the interplay between amnesia and incompetence as follows:
>
> > Absent evidence of a mental disability interfering with the defendant's faculties for rational understanding, it is settled that mere vacuity of memory is not tantamount to legal incompetence to stand trial. It is only where the loss of memory effects [sic] or is accompanied by a mental disorder impairing the amnesiac's ability to intelligently comprehend his position or to responsibly cooperate with counsel that the accused's guaranties to a fair trial and effective assistance of counsel are threatened and therefore incapacity to stand trial may be demonstrated.
>
> *Commonwealth v. Epps*, 270 Pa.Super. 295, 411 A.2d 534, 536 (1979) (citing *Commonwealth v. Barky*, 476 Pa. 602, 383 A.2d 526 (1978)).
>
> Relying on *Commonwealth v. Price*, 421 Pa. 396, 406, 218 A.2d 758, 763 (1966), *cert. denied*, 385 U.S. 869, 87 S.Ct. 136, 17 L.Ed.2d 96 (1966), our Supreme Court rejected claims of amnesia-based incompetence in *Barky* as follows:
>
> > This defendant ... is able to comprehend his position as one accused of murder, is fully capable of understanding the gravity of the criminal proceedings against him, and is able

to cooperate with his counsel in making a rational defense as is any defendant who alleges that at the time of the crime he was insane or very intoxicated or completely drugged, or a defendant whose mind allegedly went blank or who blacked out or who panicked and contends or testifies that he does not remember anything. [*Price,* 421 Pa. at 406, 218 A.2d at 763.]

We believe [*Price* ] is indistinguishable from the instant case, since in both cases the defendants' amnesia affected only their memories of the alleged criminal incidents. As one commentator has stated:

"In his plight the amnesiac differs very little from an accused who was home alone, asleep in bed, at the time of the crime or from a defendant whose only witnesses die or disappear before trial. Furthermore, courts, of necessity, must decide guilt or innocence on the basis of available facts even where those facts are known to be incomplete, and the amnesiac's loss of memory differs only in degree from that experienced by every defendant, witness, attorney, judge, and venireman. How much worse off is a generally amnesic defendant on trial for murder, for example, than one who remembers all but the dispositive fact: who struck the first blow?" 71 Yale L.J. 109, 128 (1961).

We do not believe that [Barky's] amnesia alone denied him either the effectiveness of counsel or the opportunity to present a defense.

*Barky,* 476 Pa. at 606, 383 A.2d at 527–528.

*In re R.D.,* 44 A.3d 657, 665–66 (Pa.Super.2012), *appeal denied,* —. Pa. —, 56 A.3d 398 (2012).

In the case *sub judice,* Appellant initially was deemed incompetent by the court-appointed psychiatrist, Arthur Boxer, M.D., who admitted that his finding was based solely on Appellant's subjective reporting of amnesia. Dr. Boxer conceded that his diagnosis was based on preliminary observations, and further neuropsychological testing would significantly clarify Appellant's status. N.T., 5/8/08, at 33. Appellant's neurologist, Bruce Grossinger, D.O., testified during a deposition that he also concluded Appellant suffered from amnesia based on his clinical observations, review of the medical records from the accident, and the report submitted by Dr. Boxer. N.T., 4/7/08, at 29–32. Dr. Grossinger also recommended neuropsychological testing.

Based on these assessments, the trial court initially deemed Appellant incompetent, but specifically ordered a re-evaluation, at which time Dr. Boxer declined to give an opinion, deferring instead to Dr. Grossinger's updated clinical assessments and noting that psychological testing was necessary. The court ordered this testing, and Maggie Pruett–Saratan, Master of Arts, Licensed Professional Counselor, concluded that Appellant did not suffer from any neuropsychological impairment. Alan Silberman, Doctorate of Education, Licensed Professional Counselor, who worked in Dr. Grossinger's office, also administered psychological tests on Appellant and concluded that Appellant did not suffer from neuropsychological impairment.[5] Dr. Grossinger subsequently authored a letter in which he indicated that, after consultation with Dr. Silberman, he

---

**5.** Appellant argues that the court could rely only on a psychiatrist's report, citing 50 P.S. § 7402(e). Appellant does not appear to have raised this objection with the trial court, however. Accordingly, he has waived it on appeal. *See* Pa.R.A.P. 302(a).

concluded Appellant suffered from permanent brain injury. Dr. Grossinger, however, did not discuss the neuropsychological tests performed by Dr. Silberman or Ms. Pruett–Saratan.

Although the court scheduled a competency hearing to discuss the latest reports, Appellant was unable to produce Dr. Grossinger, who refused to appear in court to testify. N.T., 2/26/10, at 2–13. Appellant also declined to subpoena Dr. Grossinger. *Id.* at 6.

In light of the significant doubts about Dr. Grossinger's assessment as raised by the neuropsychological test results, Dr. Grossinger's failure to address the test results in a meaningful way in his report, and Dr. Grossinger's refusal to testify about his report in court, the trial court had ample reason to question Dr. Grossinger's findings. In regard to Dr. Boxer's initial finding of incompetency, he admitted that his conclusion was based primarily on an interview with Appellant, and that the neuropsychological test results would offer significant insight. Importantly, Dr. Boxer concluded that Appellant was "aware of the function of a judge, jury, defense counsel, and prosecutor in a court of law." Trial Ct. Op., at 10.

Appellant's allegation of amnesia, even if accepted as true, does not affect this analysis. Dr. Boxer concluded, even when he initially believed Appellant was incompetent, that Appellant knew the functions of a court proceeding and the roles of each person in a courtroom. He could thus comprehend, according to this analysis, his position as a defendant, the gravity of the proceedings against him, and his need to cooperate with counsel. *See In re R.D.*, 44 A.3d at 665 (quoting *Price*, 421 Pa. at 406, 218 A.2d at 763). There is no evidence that the amnesia affected his faculties for rational understanding. *Id.* (quoting *Epps*, 411 A.2d at 536).

As a result, the trial court was presented with significant evidence creating doubt as to Dr. Grossinger's findings regarding Appellant's neuropsychological impairment, and conflicting opinions from Dr. Boxer and Dr. Grossinger regarding Appellant's ability to appreciate the court proceedings. The trial court had copious reasons to find that Appellant no longer established his incompetency by a preponderance of the evidence. *See* 50 P.S. § 7402(d). We find no abuse of discretion in the trial court's decision to lift the stay and find Appellant competent to stand trial. *See Sanchez, supra.* Accordingly, we affirm the judgment of sentence.

Commonwealth's Application for Post-Submission Communication granted. Judgment of sentence affirmed.