J-S90025-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOE LINCEN MESA | |
| Appellant | No. 970 EDA 2016 |

Appeal from the Judgment of Sentence Dated March 15, 2016
In the Court of Common Pleas of Carbon County
Criminal Division at No(s): CP-13-CR-0000706-2009

BEFORE:  OTT, J., SOLANO, J., and JENKINS, J.

MEMORANDUM BY SOLANO, J.:                **FILED DECEMBER 05, 2016**

Appellant, Joe Lincen Mesa, appeals from the judgment of sentence of 18 to 36 months' incarceration, imposed by the trial court after a jury convicted Appellant of two counts of arson.[1]  On appeal, Appellant challenges the trial court's determination that he was competent to be sentenced.  We affirm.

The trial court recited the protracted background of this case as follows:

> On August 8, 2011, [Appellant] was convicted of two counts of arson with respect to the incendiary destruction of his home and automobile on February 27, 2009.  That [Appellant] had committed these offenses was evident from the evidence presented at trial by the Commonwealth[.] . . .

_____

[1] 18 Pa.C.S. § 3301(a)(1)(i)(arson endangering persons) and (c)(3)(arson endangering property with intent to collect insurance).

[Appellant] was originally scheduled for sentencing on October 17, 2011, and a presentence investigation report and mental health evaluation were ordered. Sentencing was continued several times until March 27, 2012, at which time [Appellant] presented Dr. Raja S. Abbas, a board-certified psychiatrist, who testified that [Appellant] appeared to have a cognitive disorder which rendered him incompetent to be sentenced, but that a detailed neuropsychological evaluation was necessary "to determine the extent or presence of any cognitive issues." In consequence, [Appellant's] sentencing was continued multiple times, until July 29, 2014.

On March 24, 2014, David S. Glosser testified to the results of a neuropsychological assessment he performed on June 27, 2012. Dr. Glosser is a neuropsychologist; he is neither a medical doctor nor a psychiatrist. Dr. Glosser testified that [Appellant] exhibited significant signs of cognitive dysfunction and that as a result of this dysfunction and the medications he was taking, his judgment was compromised. Dr. Glosser also testified that due to [Appellant's] poor mastery of the English language, [Appellant's] case was a difficult one to evaluate. Unfortunately, due to the delay between when Dr. Glosser's examination was performed and his testimony presented, at the time Dr. Glosser testified, he did not know the current state of [Appellant's] cognitive functions.

To update his assessment, Dr. Glosser re-examined [Appellant] on April 14, 2014. Following this re-examination, Dr. Glosser testified on July 29, 2014, that [Appellant] was able to understand the nature of the charges against him, that he had been convicted, the he needed to be sentenced and what sentencing is, and that he was at risk of being punished, which he dreaded. Dr. Glosser further noted that [Appellant] had the capacity and ability to participate in sentencing and to provide information to the court, but that he had a tendency to wander in his responses.

With the results of the neuropsychological assessment which Dr. Abbas had earlier recommended now available, Dr. Abbas performed an updated psychiatric evaluation on July 18, 2015. On September 18, 2015, Dr. Abbas testified that [Appellant] was not competent to be sentenced. In explaining this conclusion, Dr. Abbas stated that [Appellant] was paranoid, that he believed the proceedings were a sham and everyone was an imposter, and that the facts upon which he was prosecuted

were made up. At this hearing, at the request of the court, [Appellant] testified for the first time, and the court had the opportunity to hear [Appellant's] responses to questions and to observe [Appellant's] demeanor. [Appellant] appeared to understand the questions asked and was responsive, however, at times, as predicted by Dr. Glosser, [Appellant] wandered in his responses. By order dated December 29, 2015, we found [Appellant] to be competent to be sentenced.

[Appellant] was scheduled for sentencing on February 23, 2016. At that time, both [Appellant] and his counsel appeared in court, and [Appellant] was questioned and given an opportunity to present evidence to the court for sentencing purposes. The court also had available to it the presentence investigation report previously prepared by the Carbon County Adult Probation Office and dated March 22, 2012. Unfortunately, before [Appellant's] sentence was pronounced, [Appellant] collapsed and sentencing was deferred to March 15, 2016. On March 15, 2016, [Appellant] was sentenced to a period of imprisonment of no less than eighteen months nor more than three years in a state correctional institution, to be followed by two years state probation, on Count 1, . . . and a concurrent sentence of one to two years on Count 2.

Trial Ct. Op., 5/17/16, at 2-6 (footnotes and citations omitted).

Appellant filed this timely appeal, and presents a single issue for our review:

Whether the Trial Court erred in finding [Appellant] competent to proceed in this matter when the undisputed testimony of two mental health professionals established that [Appellant] suffered from several mental health conditions that cause him to lack a rational understanding of these proceedings and to lack the ability to consult with his lawyer with a reasonable degree of rational understanding?

Appellant's Brief at 5.

Appellant argues that he was incompetent to proceed with sentencing because, he "possesses a factual understanding of the legal proceedings but

lacks a rational understanding of the proceedings because of various mental health issues, most notably a delusion that the proceedings were a conspiracy against him." Appellant's Brief at 12. The Commonwealth responds that, to the contrary, Appellant failed to overcome the presumption of competency by a preponderance of credible evidence. Commonwealth's Brief at 5.

In reviewing Appellant's claim, we are mindful of the following:

> A defendant is presumed competent and it is his burden to show otherwise, the determination of which is within the sound discretion of the trial court. *Commonwealth v. Sanchez*, 589 Pa. 43, 64, 907 A.2d 477, 490 (2006) (citing *Commonwealth v. Sam*, 535 Pa. 350, 357, 635 A.2d 603, 606 (1993); *Commonwealth v. Chopak*, 532 Pa. 227, 235, 615 A.2d 696, 700 (1992)). When a competency hearing takes place, incompetency may be established by a preponderance of the evidence. 50 P.S. § 7402(d). The sensitive nature of competency determinations requires the appellate courts to afford great deference to the conclusions of the trial court, which has had the opportunity to observe the defendant personally. *Id.* (citing *Chopak, supra*). When the record supports the trial court's determination, we will not disturb it. *Id.* at 65, 907 A.2d at 490.

*Commonwealth v. Stevenson*, 64 A.3d 715, 720 (Pa. Super. 2013),

*appeal denied*, 80 A.3d 777 (Pa. 2013) (table).

Regarding the role of the trial court, our Supreme Court has stated:

> Where there is reason to doubt a defendant's competency, the trial court is required to conduct a competency hearing. *Commonwealth v. Uderra*, 580 Pa. 492, 862 A.2d 74, 88 (2004). Competency is measured according to whether the defendant has sufficient ability at the pertinent time to consult with counsel with a reasonable degree of rational understanding, and to have a rational as well as a factual understanding of the

proceedings. *Id.* (citing *Commonwealth v. Appel*, 547 Pa. 171, 689 A.2d 891, 899 (1997), and 50 P.S. § 7402).

*Commonwealth v. Davido*, 106 A.3d 611, 639 (Pa. 2014) (per curiam).

Consonant of the foregoing, we have reviewed the record and discern no abuse of discretion by the trial court. Moreover, the Honorable Roger N. Nanovic, sitting as the trial court, has authored an opinion which comprehensively and ably addresses Appellant's appellate argument, and ultimately concludes:

Expert opinions are intended to assist in understanding the evidence or determining a fact in issue. Pa.R.E. 702(b). They are not to be followed blindly without examining the facts on which they are based, nor are the conclusions reached to be accepted notwithstanding what the credible evidence clearly proves to be true. This is particularly true when the subject matter of the opinion concerns matters which we indirectly deal with on a daily basis and in our interactions with others in evaluating the validity of what we are told, and in evaluating their understanding of what we say and do.

[Appellant] claims he was incompetent to be sentenced: that he did not have the capacity to understand what sentencing is, or to participate and assist his counsel at sentencing. This is contrary to our observations and evaluation of [Appellant's] testimony over numerous hearings and [Appellant's] actual participation at sentencing. This is contrary to specific testimony given by Dr. Glosser concerning [Appellant's] capacity to be sentenced. This is contrary to [Appellant's] acute awareness of the effect sentencing could have on him and his dread of that sentence. Simply stated, [Appellant] did not overcome the presumption of competency by a preponderance of the evidence.

Trial Ct. Op., 5/17/16, at 17-18.

Prior to reaching his conclusion, Judge Nanovic engaged in a thorough analysis, citing prevailing legal authority and the notes of testimony, in

- 5 -

support of his determination that Appellant was competent to be sentenced. Because the record substantiates the trial court's conclusions, we will not disturb the trial court's exercise of its discretion. **_See Stevenson_**, 64 A.3d at 720. We adopt and incorporate the trial court's May 17, 2016 opinion, in its entirety, in disposing of this appeal. The parties shall attach a copy of that opinion to this one in the event of future proceedings.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/5/2016</u>

TCO        S90025-16

IN THE COURT OF COMMON PLEAS OF CARBON COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA        :
                                    :
            vs.                     :        No. 706 CR 2009
                                    :
JOE LINCEN MESA,                    :
            Defendant               :

Michael S. Greek, Esquire           Counsel for Commonwealth
Assistant District Attorney

Matthew J. Mottola, Esquire.        Counsel for Defendant


MEMORANDUM OPINION

Nanovic, P.J. - May 17, 2016

Joe Lincen Mesa, the Defendant in these criminal proceedings, raises one issue on direct appeal from his conviction of arson, that he was incompetent at the time of sentencing and, therefore, incapable of being sentenced. Because the Commonwealth chose not to have Defendant's competency evaluated, notwithstanding Defendant's examination by two defense experts one of whom concluded Defendant was incompetent to be sentenced, our decision to sentence Defendant requires careful review of the evidence presented on this issue, including what Defendant had to say and the significance of the evidentiary presumption that a defendant is competent.

[FN-07-16]
1

## FACTUAL AND PROCEDURAL BACKGROUND

On August 8, 2011, Defendant was convicted of two counts of arson[1] with respect to the incendiary destruction of his home and automobile on February 27, 2009. That Defendant had committed these offenses was evident from the evidence presented at trial by the Commonwealth: (1) the fire which destroyed Defendant's property had three separate points of origin - in the kitchen and a rear bedroom of the home, and in Defendant's automobile, which was parked outside in front of the home; (2) the cause of the fire at each location was consistent with the use of an inflammatory liquid - rubbing alcohol; (3) all reasonable accidental causes were eliminated; (4) Defendant was home at the time the fires began; (5) the home was recently posted and was scheduled for sheriff's sale on March 3, 2009; and (6) Defendant admitted setting the fires.

Defendant was originally scheduled for sentencing on October 17, 2011, and a presentence investigation report and mental health evaluation were ordered. Sentencing was continued several times until March 27, 2012, at which time Defendant presented Dr. Raja S. Abbas, a board-certified psychiatrist, who testified that Defendant appeared to have a cognitive disorder which rendered him incompetent to be sentenced, but that a

---

[1] 18 Pa.C.S.A. § 3301(a)(1)(i) (arson endangering persons) and 3301(c)(3) (arson endangering property with intent to collect insurance).

[FN-07-16]
2

detailed neuropsychological evaluation was necessary "to determine the extent or presence of any cognitive issues." (N.T. 3/27/12, pp.9-10, 12, 19, 22, 27-29, 37, 43).[2] In consequence, Defendant's sentencing date was continued multiple times, until July 29, 2014.

On March 24, 2014, David S. Glosser testified to the results of a neuropsychological assessment he performed on June 27, 2012.[3] Dr. Glosser is a clinical neuropsychologist; he is neither a medical doctor nor a psychiatrist. (N.T. 3/24/14, p.9; N.T. 7/29/14, p.21). Dr. Glosser testified that Defendant exhibited significant signs of cognitive dysfunction and that as a result of this dysfunction and the medications he was taking, his judgment was compromised. (N.T. 3/24/14, pp.16-17). Dr.

---

[2] Such testing, according to Dr. Abbas, would involve detailed base testing of Defendant's memory and cognition to determine his ability to take in and process information and make logical decisions. (N.T. 3/27/12, pp.24-25). Dr. Abbas further testified that this testing would assist in assessing whether any medications Defendant was taking were affecting his thought process and whether Defendant's difficulties were genuine or exaggerated. (N.T. 3/27/12, pp.25-26).

Dr. Abbas first met Defendant a few weeks prior to his testimony on March 27, 2012. (N.T. 3/27/12, p.9). Defendant had been admitted to the older adult unit at the Palmerton Hospital for depression and nightmares. (N.T. 3/27/12, p.9). Dr. Abbas was the medical director of this unit. (N.T. 3/27/12, pp.4-5). At the time of his testimony, Dr. Abbas explained that he had been a practicing psychiatrist for only four years and only once before had evaluated the legal competence of a defendant to stand trial. (N.T. 3/27/12, pp.5-6). Given these circumstances, Dr. Abbas testified that his diagnosis of Defendant was tentative. (N.T. 3/27/12, p.9). As a tentative diagnosis, Dr. Abbas testified Defendant suffered from major depressive disorder with psychotic features, chronic pain disorder, and a possible cognitive disorder. (N.T. 3/27/12, pp.9, 18-19, 27-28).

[3] As explained by Dr. Glosser, because different areas or regions of the brain perform different and discrete functions, the tests he performed were designed to measure different cognitive functions in order to evaluate the functioning and relative intactness of the various areas of Defendant's brain. (N.T. 3/24/14, pp.11-12).

[FN-07-16]

Glosser also testified that due to Defendant's poor mastery of the English language, Defendant's case was a difficult one to evaluate. (N.T. 3/24/14, p.13). Unfortunately, due to the delay between when Dr. Glosser's examination was performed and his testimony presented, at the time Dr. Glosser testified, he did not know the current status of Defendant's cognitive functions. (N.T. 3/24/14, pp.21, 27-29).

To update his assessment, Dr. Glosser re-examined Defendant on April 14, 2014. Following this re-examination, Dr. Glosser testified on July 29, 2014, that Defendant was able to understand the nature of the charges against him, that he had been convicted, that he needed to be sentenced and what sentencing is, and that he was at risk of being punished, which he dreaded. (N.T. 7/29/14, pp.11, 16-17). Dr. Glosser further noted that Defendant had the capacity and ability to participate in sentencing and to provide information to the court, but that he had a tendency to wander in his responses. (N.T. 7/29/14, pp.17-18).

With the results of the neuropsychological assessment which Dr. Abbas had earlier recommended now available, Dr. Abbas performed an updated psychiatric evaluation on July 18, 2015. (N.T. 9/18/15, p.6). On September 18, 2015, Dr. Abbas testified that Defendant was not competent to be sentenced. (N.T. 9/18/15, pp.13-15). In explaining this conclusion Dr. Abbas

[FN-07-16]
4

stated that Defendant was paranoid, that he believed the proceedings were a sham and everyone was an imposter, and that the facts upon which he was prosecuted were made up. (N.T. 9/18/15, pp.13-16). At this hearing, at the request of the court, Defendant testified for the first time, and the court had the opportunity to hear Defendant's responses to questions and to observe Defendant's demeanor. (N.T. 9/18/15, p.41). Defendant appeared to understand the questions asked and was responsive, however, at times, as predicted by Dr. Glosser, Defendant wandered in his responses. (N.T. 9/18/15, pp.30, 46-47, 66). By order dated December 29, 2015, we found Defendant to be competent to be sentenced.

Defendant was scheduled for sentencing on February 23, 2016. At that time, both Defendant and his counsel appeared in court, and Defendant was questioned and given an opportunity to present evidence to the court for sentencing purposes. The court also had available to it the presentence investigation report previously prepared by the Carbon County Adult Probation Office and dated March 22, 2012. Unfortunately, before Defendant's sentence was pronounced, Defendant collapsed and sentencing was deferred until March 15, 2016. (N.T. 2/23/16, p.29).[4] On March 15, 2016, Defendant was sentenced to a period of imprisonment of

---

[4] At his continued sentencing on March 15, 2016, Defendant explained that due to the stress of the proceeding, his blood pressure went "sky high" and he fainted. (N.T. 3/15/16, p.3).

[FN-07-16]

5

no less than eighteen months nor more than three years in a state correctional institution, to be followed by two years state probation, on Count 1, 18 Pa.C.S.A. § 3301(a)(1)(i) (arson endangering persons), and a concurrent sentence of one to two years on Count 2, 18 Pa.C.S.A. § 3301(c)(3) (arson endangering property).

On March 21, 2016, Defendant timely appealed from the judgment of sentence. In this appeal Defendant raises one issue, that we "erred in finding Joe Mesa competent to proceed in this matter when the undisputed testimony of two mental health professionals established that Mr. Mesa suffered from several mental health conditions that cause him to lack a rational understanding of these proceedings and to lack the ability to consult with his lawyer with a reasonable degree of rational understanding." *See* Defendant's Concise Statement of Errors Complained of on Appeal.

## DISCUSSION

A criminal defendant is presumed to be competent to stand trial and to be sentenced. Commonwealth v. Smith, 17 A.3d 873, 899 (Pa. 2011), *cert. denied sub nom.* Smith v. Pennsylvania, 133 S.Ct. 24 (U.S. 2012). To prove otherwise, the defendant must establish by a preponderance of the evidence that he was either "substantially unable to understand the nature or object of the proceedings against him or to participate and assist in his

[FN-07-16]

defense." 50 P.S. § 7402(a); Smith, 17 A.3d at 899-900; Medina v. California, 505 U.S. 437, 448 (1992). Stated differently, the relevant question in a competency determination is "whether the defendant has sufficient ability at the pertinent time to consult with counsel with a reasonable degree of rational understanding, and to have a rational as well as a factual understanding of the proceedings." Commonwealth v. Davido, 106 A.3d 611, 639 (Pa. 2014) (*per curiam*) (citations omitted); Dusky v. United States, 362 U.S. 402 (1960) (*per curiam*).

Defendant claims on appeal that we erred because we did not accept the "undisputed testimony" of his mental health experts that Defendant lacked a "rational understanding of these proceedings" and the "ability to consult with his lawyer with a reasonable degree of rational understanding." In addressing this issue, it is important to first emphasize that the proceeding at issue is Defendant's sentencing. Defendant was tried before a jury and convicted on August 8, 2011. Defendant's competency to be tried has never been challenged. The first time competency was raised as an issue was in March 2012, after Defendant's conviction. (N.T. 3/27/12, p.41). This is, coincidentally, at the same time when Defendant's presentence investigation report was completed. In that report, an aggregate period of imprisonment in a state correctional facility of not less than three years nor more than six years

[FN-07-16]
7

was recommended. In that report, substantial information pertinent to sentencing was obtained directly from Defendant and his wife, none of which was disputed at the time of sentencing on March 15, 2016.[5]

Secondly, Defendant's characterization of Dr. Glosser's testimony as an expert determination that Defendant lacked a rational understanding of these proceedings or the ability to consult with his lawyer with a reasonable degree of rational understanding is not supported by the record. Dr. Glosser is neither a psychiatrist or a medical doctor; he is a clinical neuropsychologist. There is no evidence that Dr. Glosser has any training or expertise in forensic psychiatry or in evaluating an individual's legal competency to be tried or sentenced; instead, Dr. Glosser freely admitted that he did not know the legal standard by which to judge legal competency. (N.T. 3/24/14, p.26). Further, while Dr. Glosser opined that Defendant was "cognitively and psychologically incapable of *fully* understanding what was going on" and "how to make decisions in his own best interest," the extent of this limitation was never delineated. (N.T. 7/29/14, p.11). This is significant given Dr. Glosser's acknowledgment that Defendant

---

[5] At sentencing, only three corrections or updates were requested by Defendant: that his change of address be noted; that at the time of sentencing, Defendant and his wife were no longer separated, they were again living together; and that Defendant was no longer diagnosed as having a tumor on his brain, but with white matter disease. (N.T. 2/23/16, pp.3-5).

understood the nature of his criminal charges; knew he had been tried and convicted; knew that he needed to be sentenced and that this involved likely punishment which he dreaded - a natural response of anyone facing sentencing; and that Defendant possessed the capacity and ability to participate in sentencing and to provide relevant information to the court. (N.T. 7/29/14, pp.11, 16-18). Dr. Glosser never opined that Defendant was incompetent to be sentenced.

With respect to Dr. Abbas's testimony, in response to defense counsel's question, Dr. Abbas denied that Defendant was substantially unable to understand the nature and object of the criminal proceedings, but believed Defendant did not understand the exact nature of the proceedings. (N.T. 9/18/15, p.13). In explaining further, Dr. Abbas testified that Defendant believed the proceedings were manufactured as a means to deport him and that the court and the lawyers were imposters, that they were acting the role of real officials. (N.T. 9/18/15, pp.13-14). When questioned directly, Defendant admitted to knowing who the judge was, that defense counsel was his counsel representing him in this matter, and that the Assistant District Attorney who was present at the proceeding was the attorney prosecuting the case. (N.T. 9/18/15, pp.54-55, 58-59). When asked whether Defendant was substantially unable to participate in his defense and to assist defense counsel in defending him, and responding yes, Dr.

[FN-07-16]

9

Abbas explained that because of Defendant's paranoia and his irrational belief that everything had been made up against him, he, for this reason, was unable to defend himself. (N.T. 9/18/15, pp.14-15, 27-28).

At the hearing on September 18, 2015, Dr. Abbas testified that he had made two diagnoses of Defendant: (1) major depressive disorder with psychosis, and (2) dementia, not otherwise specified. (N.T. 9/18/15, p.6). While opining that Defendant experienced major depressive disorder with psychosis his entire life, Dr. Abbas acknowledged that this would not prevent him from maintaining employment, raising a family, and living a productive life. (N.T. 9/18/15, pp.25, 36-39). Dr. Abbas further acknowledged that the neuropsychological evaluations performed by Dr. Glosser did not confirm the extent of depression, psychosis, and cognitive issues he thought existed (N.T. 9/18/15, pp.12-13), and that the tests performed by Dr. Glosser were a better measure of Defendant's cognition than those he had performed (N.T. 9/18/15, p.19), which evidenced only moderate dementia and no significant change in the level of Defendant's dementia between 2012 and 2015. (N.T. 9/18/15, pp.9-10, 19). Dr. Abbas also admitted that because Defendant was born in Colombia, South America, and did not immigrate to this country until he was twenty-three years old, there was a noticeable language barrier which complicated

[FN-07-16]
10

accurate testing of Defendant's cognition and understanding, and that because of Defendant's deep-seated paranoia, he was unable to determine whether many of the things Defendant told him in fact happened or were imagined. (N.T. 9/18/15, pp.20, 39-40). This, of course, begs the question: Did they, in fact, happen? No proof was presented to the contrary.

Underlying the issue Defendant intends to present on appeal is the implied premise that the testimony of Dr. Abbas and Dr. Glosser is conclusive, that in our role as factfinder we are not permitted to weigh the strength of this evidence or its credibility, and that in ruling on Defendant's competence we cannot take into account our observations of Defendant, his demeanor, and his testimony. *But see*, Commonwealth v. McGill, 680 A.2d 1131, 1135 (Pa. 1996) (trial court's observations of defendant during colloquies and throughout trial supported the conclusion that defendant was competent to stand trial). In addition, Defendant's statement of the issue to be raised on appeal appears to ignore the difference between an undisputed fact on which no contrary evidence exists and an opinion, which by its very nature is an evaluation of factual information and which, in this case, seeks to evaluate objectively the subjective thought processes and understanding of the Defendant. Defendant's statement of the question on appeal further appears to ignore the significance of the presumption of competency and

[FN-07-16]

11

its role in evaluating whether Defendant is competent to be sentenced. Commonwealth v. duPont, 681 A.2d 1328, 1330 (Pa. 1996) (because a criminal defendant is presumed competent, the burden of proving otherwise is upon the defendant).

The threshold for competency is not high. Obviously, a criminal defendant need not have a law degree, be trained in the law, or have a detailed understanding of the law to be competent to be tried or sentenced. It is sufficient in this case if Defendant had the capacity to understand what sentencing is and to participate and assist his counsel in sentencing. Cf. Commonwealth v. Banks, 521 A.2d 1 (Pa. 1987) (a defendant's ability to cooperate and not whether he actually cooperated is essential to the determination of his legal competency to stand trial). Because the presumption favors competency, it was incumbent upon Defendant to prove that he is substantially unable to do so. See 50 P.S. § 7402(d) (providing that "a determination of incompetency shall be made by the court where incompetency is established by a preponderance of the evidence").

Following Defendant's conviction on August 8, 2011, Defendant appeared in court on seven separate occasions: March 27, 2012; March 24, 2014; July 29, 2014; September 18, 2015; February 23, 2016; March 15, 2016; and March 18, 2016. On each of these dates Defendant was polite, respectful and dressed for

[FN-07-16]
12

the occasion. (N.T. 2/23/16, p.23; N.T. 9/18/15, p.30). On the last four dates, Defendant was asked questions and testified. During these times, Defendant listened attentively and answered appropriately. In order to avoid the effects of medication on his thought processes, Defendant avoided taking certain medications, such as morphine and fentanyl for pain, which might otherwise cloud his thinking when he was in court. (N.T. 9/18/15, pp.67-68; N.T. 2/23/16, pp.23-24; N.T. 3/18/16, pp.7-8).

At times Defendant had difficulty expressing himself, but this appeared to be more because English is his second language than because of any difficulty in understanding or deficiency in thought. (N.T. 2/23/16, p.19; N.T. 3/15/16, pp.11-12). At times Defendant rambled or strayed from a question, but this more often than not was when he wanted to make a point. Defendant questioned the thoroughness of the police investigation (N.T. 9/18/15, p.52), claimed his trial counsel had not presented evidence he felt should be presented (N.T. 9/18/15, p.56; N.T. 3/15/16, p.11), and identified a third party, an insurance agent, who Defendant maintained was behind many of his problems because the agent had committed insurance fraud and Defendant threatened to expose him. (N.T. 9/18/15, pp.50-51, 74-75; N.T. 2/23/16, pp.19-20; N.T. 3/18/16, pp.29, 53-54). Defendant also at one point claimed that stomach cancer

[FN-07-16]
13

he had in the past may have returned, and he no longer wanted to go through chemotherapy again (N.T. 9/18/15, pp.49, 69-71); and that his wife was ill and dependent on him for support. (N.T. 3/18/16, pp.21-22, 46-47).

None of this points to Defendant's incompetency. To the contrary, Defendant at all times maintained his innocence and denied his guilt. It was therefore natural and expected for Defendant to do this and also to present evidence which could be considered in mitigation of any sentence imposed. Such evidence also supports Defendant's awareness of the proceedings and their purpose.

When Defendant testified about events in the past he appeared to have no difficulty in recalling what had occurred. Dr. Abbas testified that Defendant's long-term memory about the fire was intact (N.T. 3/27/12, p.34); and Defendant did not deny having rubbing alcohol in his home at the time of the fire, but testified that he always kept this in supply and used it frequently due to his health. (N.T. 9/18/15, pp.85-86). Defendant recalled when the jury returned with its verdict and questioned why the jury had not been polled, a question which revealed an insight which many laypersons do not possess

concerning court proceedings. (N.T. 9/18/15, p.84).[6] Following the verdict, in 2012 Defendant and his wife separated for more than a year, and Defendant lived by himself and cared for himself. (N.T. 3/27/12, pp.32, 35; N.T. 9/18/15, pp.43-44; N.T. 3/18/16, p.6).[7] Since the jury's verdict, Defendant maintained his driver's license, frequently drove himself to court and to go shopping, and had been specially evaluated at the request of his family doctor to ensure his ability to drive safely, and passed that evaluation. (N.T. 9/18/15, p.67; N.T. 3/18/16, pp.39-40).

Defendant testified at a bail hearing on March 18, 2016, that he was no longer seeing Dr. Abbas, that the last time he had seen Dr. Abbas was in March 2015, that he used to see Dr. Abbas every other month, and that when he did see Dr. Abbas, it was only for a short period, approximately five minutes each time. (N.T. 9/18/15, p.69; N.T. 3/18/16, pp.9, 25). Defendant further indicated that part of the reason he had seen Dr. Abbas was at the suggestion of his attorney as a way of staying out of jail. (N.T. 3/15/16, p.9). Defense counsel never presented any evidence that any of the foregoing information provided by

---

[6] In his testimony, Defendant did not use the term "polling," but described the process of polling. Moreover, Defendant's recollection in this regard was in fact correct, the jury was not polled. (N.T. 8/8/11, p.116).

[7] Notwithstanding Dr. Abbas's testimony that over the last year Defendant had not been taking care of himself and in recent visits was disheveled, dirty and had body odor, the same date Dr. Abbas testified, Defendant was in court dressed in a suit and tie, with no indication of being unclean. (N.T. 9/18/15, pp.29-30).

Defendant was inaccurate. Nor did defense counsel present any specific evidence to explain in what way Defendant was unable to assist his counsel or how his representation of Defendant for sentencing purposes was impaired.

It is not our intent to suggest or our belief that Defendant has no physical, mental or medical issues. Defendant has an extensive medical history as illustrated by his medical records. He has been treated for cancer in the past and has chronic pain syndrome attributable to a variety of physical conditions for which he is prescribed morphine and fentanyl. He is now sixty-eight years of age and been diagnosed with moderate dementia, which may or may not be common for someone of his age. He has been diagnosed with major depressive disorder with psychosis, and he likely is paranoid and misinterprets what people do and say in light of this paranoia. (N.T. 3/15/16, p.13). Nevertheless, other than conclusory statements by Dr. Abbas in response to defense counsel's questions reciting the statutory definition of incompetency in the Mental Health Procedures Act (see 50 P.S. § 7402(a)), Defendant has failed to establish that he is substantially unable to understand the nature or object of sentencing or to participate and assist his counsel at the time of sentencing, particularly in light of the presentence investigation report prepared by the Carbon County Adult Probation office which contains extensive input from

[FN-07-16]
16

Defendant and his wife, none of which was disputed as being inaccurate when presented, the updated medical information defense counsel placed in the record at the time of sentencing, our observations of Defendant (N.T. 3/15/16, pp.7-9, 11), and Defendant's actual participation at sentencing.[8] See Commonwealth v. Smith, 324 A.2d 483, 489 (Pa.Super. 1974) (holding that medical opinions about a defendant's condition should be only one of the factors relevant to an incompetency determination and admonishing courts not to surrender their careful, independent judgment of a defendant's competency in deference to conclusory psychiatric testimony by those untrained and unfamiliar with legal proceedings); Commonwealth v. Jones, 683 A.2d 1181, 1190 (Pa. 1996) ("The determination of competency to stand trial rests in the sound discretion of the trial court.").

## CONCLUSION

Expert opinions are intended to assist in understanding the evidence or determining a fact in issue. Pa.R.E. 702(b). They are not to be followed blindly without examining the facts on which they are based, nor are the conclusions reached to be

---

[8] Dr. Abbas testified that Defendant dreaded sentencing. This is a natural reaction of any criminal defendant about to be sentenced and, if anything, evidences Defendant's understanding of the proceedings. (N.T. 3/27/12, p.23). Nor do we believe it unfair to note at this point that Defendant has been able to manipulate the system for more than four years to delay sentencing, or to state that in 2005 Defendant was convicted of forgery, a crimen falsi offense. (N.T. 2/23/16, p.21; N.T. 3/15/16, p.13).

[FN-07-16]
17

accepted notwithstanding what the credible evidence clearly proves to be true. This is particularly true when the subject matter of the opinion concerns matters which we indirectly deal with on a daily basis and in our interactions with others in evaluating the validity of what we are told, and in evaluating their understanding of what we say and do.

Defendant claims he was incompetent to be sentenced: that he did not have the capacity to understand what sentencing is, or to participate and assist his counsel at sentencing. This is contrary to our observations and evaluation of Defendant's testimony over numerous hearings and Defendant's actual participation at sentencing. This is contrary to specific testimony given by Dr. Glosser concerning Defendant's capacity to be sentenced. This is contrary to Defendant's acute awareness of the effect sentencing could have on him and his dread of that sentence. Simply stated, Defendant did not overcome the presumption of competency by a preponderance of the credible evidence.

BY THE COURT:

_____ J.

[FN-07-16]

18