J-A04043-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
TYMEAR JOHNSON   :
  :
Appellant   :   No. 1033 EDA 2020

Appeal from the Judgment of Sentence Entered January 23, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004691-2017

BEFORE: STABILE, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:       **FILED FEBRUARY 17, 2021**

Tymear Johnson (Johnson) appeals from the judgment of sentence imposed following his jury conviction in the court of common pleas of Philadelphia County (trial court) of first-degree murder, carrying a firearm without a license, carrying a firearm on a public street in Philadelphia and possession of an instrument of a crime.[1] Johnson challenges the trial court's decision that he was competent to stand trial. We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(a), 6106, 6108 and 907(a).

**I.**

**A.**

On March 10, 2017, Johnson and co-defendant Christopher Southerland (Southerland) were on a bus traveling to their residence in Philadelphia from the King of Prussia Mall when they observed a group of young teenage boys at the Gold Fish Chinese Restaurant.[2]  Upon returning home, Johnson said, "let's go fuck them up" to Southerland, who had never met the boys but agreed with Johnson and went with him to the restaurant.  (N.T. Trial, 11/05/19, at 172).  Before they left, Johnson put on a ski mask and armed himself with a .45 caliber handgun.  (**See id**. at 176).

At approximately 10:30 p.m., Johnson and Southerland entered the restaurant and approached the table where thirteen-year-old Khiseer Davis-Prather was eating dinner with three of his friends.  Johnson said a few words to the group about "shit that you was talking" and shot Prather in the head at point-blank range.  (**Id.** at 178).  The shooting was captured on videotape surveillance camera.

**B.**

The Commonwealth initially offered Johnson a plea agreement of not less than thirty nor more than sixty years' imprisonment in exchange for his entry of a guilty plea to third-degree murder and criminal conspiracy, which

---

[2] Johnson was nineteen years' old at the time of the incident.

he rejected. (**See** N.T. Plea Hearing, 8/10/18, at 20-21). At the August 10, 2018 plea colloquy, Johnson indicated he was aware that Southerland had entered a guilty plea to conspiracy and would testify against him at trial. (**See id.** at 13). Because defense counsel raised concerns regarding Johnson's competency, the trial court agreed to hold a hearing on this issue, although it noted its belief that Johnson was competent and "understood everything that was going on here today." (**Id.** at 27).

The trial court held a contested competency hearing on February 8, 2019, at which the defense presented the testimony of clinical and forensic psychologist Dr. Robin Belcher-Timme and psychiatrist Dr. Robert Stanton testified on the Commonwealth's behalf. (**See** N.T. Competency Hearing, 2/08/19, at 2-4, 91). Dr. Timme interviewed Johnson twice and reviewed reports relating to his mental health prepared by James G. Jones, M.D.; neuropsychologist Dr. Carol Armstrong; and Dr. Stanton in consultation with psychologist Jules DeCruz. (**See id.** at 6-8, 10, 23-24, 54). Dr. Timme noted that Dr. Jones' report was sparse and identified no serious mental health concerns. (**See id.** at 11, 52). Dr. Armstrong's assessment placed Johnson's IQ at 61, which Dr. Timme explained is significantly subaverage, but her report did not specifically address competency. (**See id.** at 16, 61).[3] Dr.

_____

[3] The threshold for subaverage intellectual functioning is an IQ of approximately 75 or below. (**See id.** at 16).

DeCruz similarly placed Johnson's IQ at 63.5. (*See id.* at 30, 82, 88). Dr. Timme testified to his conclusion that Johnson was not competent to stand trial. He opined, "there are substantial deficits in factual and rational abilities such that Mr. Johnson does not understand the nature and object of the proceedings and is unable to adequately assist in his defense." (*Id.* at 37).

On cross-examination, Dr. Timme acknowledged that following Johnson's arrest, he asked to speak with an attorney during interrogation by police detectives. (*See id.* at 42). Dr. Timme also conceded that although Johnson had informed him that he had completed only the seventh grade, Johnson neglected to tell him that he earned his diploma in 2015 from a youth services program with a cumulative GPA of 3.13. (*See id.* at 43-44, 49-50). Johnson self-reported bipolar disorder and was receiving medication to treat it at the prison, but Dr. Timme ruled out this diagnosis. (*See id.* at 86). With regard to the IQ tests, Dr. Timme recognized Johnson's background of drug use from the age of twelve and the possibility that he was high at the time the tests were administered. (*See id.* at 83-84, 88).

Dr. Stanton testified to his fifty-two years of experience in the mental health field and stated that he had reviewed the reports prepared by Drs. Timme, Armstrong and Jones. (*See id.* at 91-92). Dr. Stanton met with Johnson twice to evaluate him and observed his participation in psychological testing. (*See id*. at 91-93). He opined that Johnson was legally competent and "has the necessary intellectual capacity to be able to understand his

charges and cooperate with counsel and take part in the proceedings." (*Id.* at 93). Dr. Stanton testified "Johnson demonstrated much more ability to participate in legal proceedings than is evidenced by Dr. Timme's report." (*Id.* at 95-96). He explained that Johnson was alert during the evaluation and demonstrated a rational understanding of details he was more comfortable with; for example, he showed a sophisticated knowledge of basketball. (*See id.* at 102-03, 106).

Johnson testified that he received his diploma while in placement by the juvenile court. (*See id.* at 120-21). The trial court colloquied Johnson at length regarding his understanding of the charges against him, the term of his potential sentence, the respective roles of those involved in a jury trial and the trial process. (*See id.* at 122-41). When the court asked him if he understood everything about the courtroom and his case, he responded: "No, I ain't going to say I understand everything but I understand a lot of it." (*Id.* at 144). He indicated that he did not have any questions and that if he did, he would ask his lawyer. (*See id.* at 145). Johnson also testified to his rejection of the plea offer and his understanding that Southerland had entered a plea and would testify against him at trial. (*See id.* at 147-50).

The trial court found Johnson competent to stand trial, concluding that he demonstrated an understanding of the courtroom and was able to assist in his defense. (*See id.* at 164). The court stated that although Johnson may have difficulty with technical legal concepts, overall, he demonstrated "a very

good working knowledge of the criminal justice system." (***Id.*** at 162; ***see id.*** at 163).

## C.

Prior to trial, defense counsel filed a Notice of Insanity or Mental Infirmary Defense to pursue diminished capacity in an effort to obtain a lesser charge of third-degree murder.[4]  Johnson was then interviewed by the Commonwealth's expert, Dr. Michelle Joy.  On October 30, 2019, Johnson withdrew the diminished capacity defense and his counsel thoroughly colloquied him regarding this action.  (***See*** N.T. Colloquy, 10/30/19, at 3). Johnson testified that he was satisfied with counsel's representation and that his decision to withdraw the defense was voluntary.  (***See id.*** at 5).  Johnson explained that he discussed Dr. Joy's evaluation with counsel and that he elected not to pursue diminished capacity because he did not want Dr. Joy to testify for the Commonwealth at trial.  (***See id.*** at 5-6).

On November 8, 2019, the jury found Johnson guilty of the above-listed offenses.  On January 23, 2020, the trial court sentenced Johnson to life imprisonment without the possibility of parole followed by not less than three and one-half nor more than seven years' incarceration.  This timely appeal

---

[4] To establish the defense of diminished capacity, a defendant must prove that his cognitive abilities of deliberation and premeditation were so compromised by a mental defect that he was unable to formulate the specific intent to kill. ***See Commonwealth v. Mason***, 130 A.3d 601, 630 (Pa. 2015).  For a defendant who proves diminished capacity, first-degree murder is mitigated to third-degree murder.  ***See id.***

followed the trial court's denial of Johnson's post-sentence motion. Johnson and the trial court complied with Rule 1925. **See** Pa.R.A.P. 1925(a)-(b).

## II.

Johnson argues that the trial court erred in finding him competent to stand trial where the record demonstrates he was not remotely competent and that he instead made decisions lacking a reasonable basis against the advice of counsel. Johnson points to his rejection of the Commonwealth's plea offer and his withdrawal of the diminished capacity defense, in light of the fact that the shooting was captured on videotape.

"A defendant is presumed competent and it is his burden to show otherwise, the determination of which is within the sound discretion of the trial court." **Commonwealth v. Stevenson**, 64 A.3d 715, 720 (Pa. Super. 2013) (citation omitted). Pennsylvania's definition of incompetency is as follows:

> Whenever a person who has been charged with a crime is found to be substantially unable to understand the nature or object of the proceedings against him or to participate and assist in his defense, he shall be deemed incompetent to be tried, convicted or sentenced so long as such incapacity continues.

50 P.S. § 7402(a).

A defendant must establish that he is either unable to understand the nature of the proceedings against him or to participate in his own defense by a preponderance of the evidence. **See** 50 P.S. § 7402(d). We extend great deference to the trial court's findings as to competency because it had the

opportunity to directly observe the defendant's demeanor. **See Stevenson**, **supra** at 720.

Additionally, it is a proper exercise of the trial court's discretion to accept one expert witness's opinion over that of a conflicting opinion where the record adequately supports such a resolution. **See Commonwealth v. Flor**, 998 A.2d 606, 618 (Pa. 2010). It is well-settled that there is a distinction between whether a defendant is **unable** to cooperate with his counsel and whether he **chooses not** to cooperate. **See id.** The focus of a competency hearing is on the former and not on whether the defendant is actually cooperating. **See id.**

Instantly, the record reflects that Johnson was aware of the function of a trial and the roles of each person in the courtroom. He understood his position as a defendant, the gravity of the life sentence he was facing and his need to consult with counsel if he had any questions. Although the trial court was presented with conflicting opinions regarding Johnson's ability to appreciate the court proceedings, it acted within its discretion in accepting Dr. Stanton's opinion over that of Dr. Timme.

Additionally, the trial court entered its ruling after observing and interacting with Johnson over the course of multiple hearings and concluded that he had an appreciation of his legal circumstances and the ability to reasonably assist in his defense. In fact, after extensive colloquies, the court found that Johnson was adept at understanding basic legal concepts and fully understood the proceedings.

Judgment of sentence affirmed.


*Judgment Entered.*

_Joseph D. Seletyn, Esq._
_Prothonotary_


*Date:* _2/17/2021_